**James Roy LUCAS and H. & H. Transport Company, Appellants,**

v.

**Virginia DAVIS, Appellee.**

Court of Appeals of Kentucky.

Dec. 9, 1966.

A. J. Deindoerfer, James M. Graves, William P. Swain, Boehl, Stopher, Graves & Deindoerfer, Louisville, Pat Rankin, Stanford, for appellants.

James F. Clay, Danville, for appellee.

DAVIS, Commissioner.

The appellee obtained judgment against the appellants in the sum of $30,851.10 based upon personal injuries she received in an automobile-truck accident on February 10, 1963. There have been two jury trials of the action; at the first one the trial judge directed a verdict in favor of appellee, and submitted the issue of damages to the jury. The first jury rendered its verdict for appellee for $30,787.50, but the trial judge set that verdict aside as excessive. It was at the second trial, wherein only the issue of damages was submitted to the jury, that the verdict and judgment on appeal resulted. The appellants assert three assignments of error: (1) The court erred in directing a verdict against appellants; (2) the damages awarded were excessive, and (3) prejudicial error was committed in refusing certain evidence proffered by appellants.

Mrs. Davis, the appellee, was in the back seat of a passenger car being driven by her son when the accident occurred. The tractor-trailer unit of H. & H. Transport Company, operated by its employee Lucas, collided with the rear of the Davis car. It appears that several vehicles were travelling in procession along Highway 150 between Stanford and Crab Orchard about 4:30–5:00 P.M. on the rainy, foggy afternoon in February when the accident occurred. There were two lumber trucks at the "head" of the procession; then followed two passenger cars, the first a Ford and the second a Corvair (we accept these designations for the purposes of the opinion). The Davis car was next in line behind the Corvair.

The Ford turned to its right suddenly. The driver of the Davis car testified that he did not observe any turning signal from the driver of the Ford; that the driver of the Corvair (a Plymouth, it was

believed by the Davis driver) slowed suddenly to avoid striking the Ford. The Corvair pulled into the passing lane to miss the Ford as the Davis car was being slowed. Before the Davis car had come to a complete stop the tractor-trailer unit struck the Davis car.

The appellant truck-driver testified that he applied his brakes as soon as he was aware of the emergency stopping situation ahead, but that he was unable to bring his truck to a stop before it collided with the Davis car. The witnesses estimated that the cars had been travelling at 40–45 mph just before the accident, and that they had been spaced about 100–150 feet apart, although the appellant truck-driver saw that the leading cars had "bunched" somewhat just before the accident.

The road was wet and the trailer of the truck was empty. These conditions, it was explained, made it impossible to apply the brakes on the tractor-trailer continuously. The appellant Lucas said that there was a probability that his unit would have "jack-knifed" had he applied the brakes at their maximum braking power continuously.

Although the driver of the Ford stopped and talked to some of the occupants of the Davis car, his identity was not learned; he did not testify, and was not a party to the lawsuit. It is the theory of the appellants that the negligence of the driver of the Ford was the sole cause of the accident, hence no verdict should have been directed for the appellee, but rather that a verdict should have been directed for the appellants.

■ The appellee contends that there is no jury issue because the negligence of appellant Lucas was shown conclusively to be a *concurring* cause of the accident even if the negligence of the Ford's driver be conceded. We agree that appellee was not required to prove that the negligence of appellant Lucas was the sole cause of the accident. However, we have difficulty in saying as a matter of law that the appellant Lucas was guilty of negligence, concurring or otherwise.

It is conceded that the driver of the Davis car gave no hand signal of his sudden slowing of his car—and for the reason that he did not have time to give such a signal. It is true that the Davis driver did not strike any vehicle in front of him, but it is to be recalled that the Corvair pulled to the left of the road, thus giving the Davis driver some more space in which to slow down. So far as can be learned from the rather scant evidence, it appears that the Ford had cleared the highway anyway, so it did not continue to present to the Davis driver a traffic obstacle.

■ Although experience confirms the suggestion that the lay public entertains the notion that the law is automatically against the driver of a vehicle which strikes another from the rear, the simple truth is that the law is not so. Counsel for these litigants recognize this, of course. However, appellee points to four duties violated by appellant Lucas, and insists that these violations convict Lucas of actionable negligence, thus justifying the directed verdict. The four alleged violations are listed by appellee as follows:

(1) Violation of KRS 189.340(6) (a), which directs that the operator of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent having regard for traffic and road conditions;

(2) violation of KRS 189.390(1), which directs that the operator of a motor vehicle shall not operate the vehicle at a greater speed than is reasonable and prudent in light of traffic and road conditions;

(3) violation of KRS 189.290(1), which directs all motorists to drive in a careful manner with regard for the safety and convenience of pedes-

trians and other vehicles on the highway;

(4) violation of KRS 189.080(1), which requires the sounding of a horn or other sound device to warn of the approach of a motor vehicle.

It is clear, we think, that each of the cited statutes substantially codifies ordinary care in the circumstances at hand. A "hindsight" application of these statutory duties does not require the construction of them urged by appellee. The substance of appellee's position seems to be that since there was an accident it is apparent that: (1) Lucas was following too closely, (2) and was going too fast, (3) and was not careful and prudent, and (4) he didn't blow his horn at all, so he was negligent. Maybe he was, but we do not find as a matter of law that he was.

 It is recalled that the Davis driver found himself suddenly confronted with an emergency; he did all that he could, and by reason of the Corvair's getting out of his way and the Ford's turning off the road, he was able to avoid colliding with them. But he had a slightly earlier opportunity to get in "prevent defense" than did Lucas. In normal conditions—as opposed to the emergency situation here—the Davis driver should have given Lucas a signal as required by KRS 189.380(3). Lucas' emergency conduct, precipitated by the original sudden stopping and turning of the Ford, augmented by Davis' lack of opportunity to give Lucas a signal of his intention to suddenly slow his car, cannot as a matter of law be characterized as negligence.

The failure to blow the horn is suggested as negligence of Lucas because if Lucas had blown his horn maybe the Davis driver could and would have pulled off of the road onto the shoulder. We consider that position ingenious but not persuasive in the circumstances at bar.

Appellee cites no decision supporting her theory. There are precedents supporting the proposition that in an emergency, acts which might violate normal duties are not always negligent acts. See Phipps v. Bisceglia, Ky., 383 S.W.2d 367; Stanley's Instructions to Juries, Section 139a. In the factual situation at bar we are of the view that the appellants were entitled to have submitted to the jury whether there was causative negligence on the part of Lucas which caused or concurred with other negligence to cause the accident and consequent injuries.

Appellants complain that the verdict was excessive, but since we are reversing for a new trial we do not reach that question; it is reserved.

 Appellants offered proof that the doctor who treated appellee suffered the suspension of his license to dispense narcotics because of the doctor's admission to being addicted to narcotics. There was no attempt to show that the doctor's medical treatment or evaluation of appellee's condition was colored by any incompetence of the doctor while under the influence of narcotics. In such state of case the trial court correctly refused to admit the evidence since it had no relevance.

The judgment is reversed for proceedings consistent with this opinion.