KENTUCKY CENTRAL INSURANCE COMPANY, Appellant,

v.

Eric W. KEMPF, Bruce Kempf, and Kathryn V. Kempf, Appellees.

No. 90–CA–001271–MR.

Court of Appeals of Kentucky.

Aug. 9, 1991.

Walter L. Porter, Louisville, for appellant.

Perry Adanick, Louisville, for appellees.

Before LESTER, C.J., and HOWERTON and STUMBO, JJ.

STUMBO, Judge:

Kentucky Central Insurance Company (hereinafter "Kentucky Central") appeals the judgment of the Jefferson Circuit Court dismissing their subrogation claims against Eric W. Kempf, a minor, and his parents, Bruce Kempf and Kathryn V. Kempf. This case presents an issue of first impression. Does KRS 304.39–320, the Underinsured Motorists Statute, require that an insured with such coverage obtain a judgment against the owner of the other automobile before the insurer has to pay these benefits, or can the insured settle with the other party and still claim coverage exists?

Jessie Marie Holcomb was severely injured in an automobile accident on November 16, 1988. The facts of the accident indicated that Eric W. Kempf, 16, the driver of the other car, was solely at fault. After retaining counsel, Holcomb began settlement negotiations with Eric and his father, Bruce Kempf, and their insurance carrier, Aetna Casualty Insurance Company. Kathryn Kempf, Eric's custodial parent, took no part in these negotiations. Holcomb notified her insurance carrier, Kentucky Central, that she was negotiating her claim with the Kempfs. A copy of a tentative settlement agreement was also sent to Kentucky Central. Kentucky Central took no action upon receiving this information.

A settlement agreement between Holcomb and the Kempfs was signed on June 30, 1989. By the terms of this agreement, Holcomb received $100,000, the full amount available under Kempf's policy with Aetna. In return, Holcomb released the Kempfs and Aetna from any and all liabilities arising from the automobile accident. Holcomb reserved any claims she might have against any other parties, specifically reserving her claim against Kentucky Central for underinsured benefits. In the release, Holcomb claims that she put Kentucky Central on notice of these negotiations, and that she had their permission to settle her claim against these parties.

Kentucky Central was not sent a copy of the executed release until December 4, 1989, after it had specifically requested Holcomb's counsel to send them a copy of the settlement. Kentucky Central immediately objected to the part of the release claiming that Holcomb had their permission to settle her claim, noting that this language was not contained in the tentative settlement agreement they had received. An angry round of correspondence followed. During this time, the counsel for Holcomb admitted that there had been no discussion concerning Kentucky Central's subrogation rights, but claimed that if he had requested it, Kentucky Central would have had to waive these rights in any event to avoid a first party bad faith or unfair settlements act suit by Holcomb. Kentucky Central responded that the Kempfs and Aetna were aware that a potential underinsured claim existed and that the settlement should not destroy their subrogation rights.

After Holcomb had received the settlement payment, Kentucky Central immediately paid her $25,000, the full amount of underinsured coverage under her policy. The policy, in pertinent part, provides as follows:

We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements.

Thus, by the policy's own terms, the insurance provided by Kentucky Central only provided coverage after the limits of the Kempf's liability policy were exhausted. Since this exhaustion could occur by judgment or settlement, it is clear that the policy itself allows settlements by the insured with the underinsured motorist.

Kentucky Central then filed this action, seeking subrogation against Eric Kempf. Eric moved to dismiss pursuant to CR 12.-02(f) for failure to state a claim. Eric claimed that under KRS 304.39–320 Holcomb had to obtain a judgment against him before Kentucky Central was obligated to pay underinsured motorist benefits; since Kentucky Central had made a payment it did not have to make, Eric argued that they had no subrogation rights. Eric also claimed that the release obtained from Holcomb barred any subrogation claim by Kentucky Central and that, in any event, Kentucky Central had no subrogation rights since it had not paid Holcomb at the time of the release. The trial court delayed deciding this motion until Eric answered interrogatories propounded by Kentucky Central. After these answers were received, Kentucky Central filed an amended complaint alleging that Bruce Kempf and Kathryn Kempf were jointly and severally liable under KRS 186.590(3). Bruce and Kathryn then filed CR 12.02(f) motions. While Bruce's motion largely repeated Eric's, Kathryn's added the ground that she did not own or furnish the automobile in question to Eric.

On June 5, 1990, the circuit court granted all three motions to dismiss. The court made no findings of fact in its judgment.

■ In determining whether any subrogation rights exist in this case, we must first examine KRS 304.39–320. This statute, as amended in 1988 and in effect at the time of the accident, provided as follows:

(1) As used in this section, "underinsured motorist" means a party with motor vehicle liability insurance coverage in an amount less then [sic] a judgment recovered against that party for damages on account of injury due to a motor vehicle accident.

(2) Every insurer shall make available upon request to its insureds underinsured motorist coverage, whereby subject to the terms and conditions of such coverage not inconsistent with this section the insurance company agrees to pay its own insured for such uncompensated damages as he may recover on account of injury due to a motor vehicle accident because the judgment recovered against the owner of the other vehicle exceeds the liability policy limits thereon, to the extent of the underinsurance policy limits on the vehicle of the party recovering. His insurance company shall be subrogated to any amounts it so pays, and upon payment shall have an assignment of the judgment against the other party to the extent of the money it pays.

In *LaFrange v. United Services Automobile Association,* Ky., 700 S.W.2d 411 (1985), the Supreme Court left the issue of whether an insured party could claim underinsurance benefits under this statute after settlement with the other party specifically undecided. In its 1988 amendment to KRS 304.39–320, the legislature added the definition of "underinsured motorist" contained in subsection one of the statute. While we reach no conclusion concerning KRS 304.39–320 prior to the 1988 amendment, we believe that the statute as amended requires that an insured must obtain a judgment before claiming underinsurance benefits from its insurer.

There are a number of reasons for this decision, the first of which is the plain wording of the statute itself. There is no ambiguity in the words themselves and the definition clears up any ambiguity concerning what makes one an "underinsured motorist." Moreover, as the Supreme Court noted in *State Automobile Mutual Insurance Company v. Empire Fire & Marine Insurance Company,* Ky., 808 S.W.2d 805 (1991), Kentucky is not a direct action jurisdiction. "In ordinary circumstances, an injured party must first obtain judgment against the opposing party defendant and then seek enforcement of the judgment rendered in an action against the defendant's indemnitor." *State Automobile, supra,* at 808. Thus, when strictly read, the statute fits into Kentucky's statutory insurance scheme: after enforcing the judgment against the defendant's indemnitor, the injured party can then claim underinsurance benefits from his own insurer for any uncompensated damages.

This decision also has the effect of removing a great deal of confusion from this area of the law. Insurers need not worry about first party bad faith or unfair claims settlement practice charges simply by requiring their insureds to get a judgment before seeking underinsurance benefits. Insureds are aware that, by settling claims against the other party defendant, they are waiving their right to claim underinsurance benefits from their own insurer. We are aware that this is contrary to the usual position of the law, which is to encourage settlements; however, we must pay heed to the intent of the legislature in this case.

Finally, we reach appellant's argument that, even if KRS 304.39–320 required its insured to obtain a judgment before it was obligated to pay her underinsurance benefits, it still has a right to recover any amounts it paid Holcomb from the appellees through common law subrogation. We feel that the statutory subrogation right contained in KRS 304.39–320(2) specifically superseded any common law subrogation right. Indeed, even if common law subrogation were available to the appellant, it made a payment to its insured that it was statutorily not obligated to make; therefore, appellant could not succeed through common law subrogation in any event. We note that the 1990 amendment to KRS 304.39–320(2) deleted the statutory subrogation right. We do not address the effect of this amendment.

We feel that the other issues presented by the appellant have been rendered moot due to the opinions already expressed herein. Accordingly, we need not discuss these issues in this opinion.

Therefore, the judgment of the Jefferson Circuit Court is affirmed.

All concur.