USAA CASUALTY INSURANCE
COMPANY, Appellant,

v.

Donna S. KRAMER, Dorval H. Donahoe;
and State Farm Mutual Insurance
Company, Appellees.

Dorval H. Donahoe, II; and State Farm
Mutual Automobile Insurance
Company, Appellants,

v.

Donna S. Kramer; and USAA Casualty
Insurance Company, Appellees.

Nos. 97–SC–844–DG, 97–SC–855–DG.

Supreme Court of Kentucky.

March 25, 1999.

Reford H. Coleman, Coleman, Easton, Lochmiller & Hall, Elizabethtown, for USAA Casualty Insurance Company.

Bixler W. Howland, Bixler W. Howland, P.S.C., Louisville, for Donna S. Kramer.

Douglas B. Taylor, Bennett, Bowman, Triplett & Vittitow, Louisville, for Dorval H. Donahoe and State Farm Mutual Automobile Insurance Company.

STUMBO, Justice.

In this automobile-accident case, Defendant Dorval Donahoe's car struck Plaintiff Donna Kramer's car from behind while Kramer was stopped in the left, inside lane at a traffic light. Donahoe claimed that as he passed through the preceding intersection while traveling in the left lane, he saw that the next light was red and that traffic was stopping. Intending to turn right beyond the next intersection, he signaled and began to move into the right lane, which appeared clear. According to Donahoe, as he moved into the right lane, traveling under the speed limit, another vehicle pulled into that lane from a restaurant drive some 20 to 30 feet ahead of him. Donahoe swerved back to the left lane to avoid the emerging vehicle and applied his brakes but was unable to stop in time to avoid hitting Kramer's car.

Kramer brought this action against Donahoe and USAA, Kramer's underinsured motorist (UIM) insurance carrier. Donahoe's liability insurer, State Farm Insurance Company, offered Donahoe's $50,000 policy limit to settle the claims against him. USAA advanced the $50,000 to Kramer in order to preserve its subrogation rights pursuant to *Coots v. Allstate Ins. Co.*, 853 S.W.2d 895 (1993). Having thus kept Donahoe in the case, USAA filed a cross-claim against him, as well as a third-party complaint against State Farm.

Before trial, USAA moved the trial court to sever Kramer's UIM claim against it, and to try the claim against Donahoe without identifying USAA as a party or mentioning the UIM claim. USAA agreed to be bound by the outcome of the Donahoe trial. The court bifurcated the action for trial, and proceeded to try Kramer's case against Donahoe. The jury, apparently unpersuaded by the evidence that Donahoe had been negligent, returned a verdict absolving Donahoe of liability. The court entered judgment accordingly, dismissing Kramer's claims against Donahoe and USAA, as well as USAA's cross-claim and third-party complaint.

The Court of Appeals reversed, holding that Kramer had been entitled to a directed verdict on the issue of Donahoe's negligence, and that the trial court had erred by bifurcating the proceedings. Donahoe and USAA moved separately for discretionary review, which this Court granted. The issues presented in this case are: 1) whether Kramer was entitled, as a matter of law, to a directed verdict on the issue of Donahoe's liability; 2) whether the trial court erred in bifurcating Kramer's respective claims against Donahoe and USAA; and 3) whether USAA is entitled to reimbursement from State Farm for the amounts USAA advanced to or on behalf of Kramer in order to preserve its subrogation rights.

■ In his first argument, Donahoe contends the Court of Appeals erred not only in concluding Kramer was entitled to a directed verdict, but also in addressing the issue at all, because Kramer never actually moved for a directed verdict at trial.

Kramer, on the other hand, strenuously argues that she moved the trial court for a directed verdict at the time she tendered proposed jury instructions and that a lengthy discussion of the issue ensued at the bench, but that somehow this discussion was not recorded on the videotape of the trial.

A review of the video record of this case indicates that the trial judge, in an effort to expedite the proceedings, may have inadvertently hindered Kramer's attempt to present and preserve the directed verdict issue. Although jury instructions are normally tendered and argued *after* the close of all evidence and *after* the parties have moved (or have failed to move) for a directed verdict, this did not occur in the case at bar. Rather, at the end of the penultimate day of trial, before all the evidence had been presented,[1] the trial judge told counsel that he wanted to discuss proposed jury instructions so as to have the proceeding resolved before the jury returned the next morning.

At this point, just as the judge and attorneys were preparing to discuss jury instructions, the video record abruptly cuts off. The record resumes the following morning, with the trial judge telling the attorneys that he has prepared jury instructions and asking if they have any objections. Counsel for Ms. Kramer stated that, other than his objections to the trial judge's refusal to submit an instruction declaring Donahoe's liability and instructing the jury to proceed to the issue of damages, he had no objection to the instructions. Kramer's counsel also indicated that, based on the judge's refusal to accept Kramer's tendered instruction directing a verdict on liability, he assumed the judge would also overrule his forthcoming motion for directed verdict after the close of Donahoe's case.

At this point in the video-record, the jury returned to the courtroom. After greeting the jurors, the judge informed them that

because all housekeeping matters had been disposed of the previous day, he was prepared to commence the reading of jury instructions. Counsel for Donahoe interrupted the judge to remind him that one remaining piece of evidence had yet to be presented to the jurors. Realizing he had skipped too far ahead, the judge allowed Donahoe's counsel to read some medical record excerpts to the jury.

When Donahoe's counsel finished reading the excerpts to the jury, the judge again hurriedly declared the evidence closed and proceeded to instruct the jury. Thus, it appears the trial judge, in an effort to move the proceedings along quickly, rushed through the formalities which normally follow the close of evidence, and in so doing inadvertently prevented Donahoe from announcing his case was closed and Kramer from formally moving for a directed verdict.

Although the burden of properly preserving the directed verdict issue for appellate review was decidedly Kramer's, and although Kramer technically did not move for a directed verdict at the close of evidence, because of the unique circumstances surrounding the conclusion of the case at bar, we will proceed to review the Court of Appeals' analysis and resolution of the merits of the directed verdict issue.

■ The standard of review of a denial of a directed verdict is set forth in *Lewis v. Bledsoe Surface Mining Co.*, Ky., 798 S.W.2d 459, 461 (1990):

All evidence which favors the prevailing party must be taken as true and the reviewing court is not at liberty to determine credibility or the weight which should be given to the evidence, these being functions reserved to the trier of fact. The prevailing party is entitled to all reasonable inferences which may be drawn from the evidence. Upon completion of such an evidentiary review, the appellate court must determine whether the verdict rendered is " 'palpably or flagrantly' against the evidence so as 'to indicate that it was

[1]. The majority of the evidence had been presented at this time. All that remained was for defense counsel to read a few short medical record excerpts to the jury.

reached as a result of passion or prejudice.' "

(Citations omitted.)

■ In reciting the facts of the case at bar, the Court of Appeals stated:

Donahoe admits that he was traveling in the left lane, he was aware that traffic was stopped at the next intersection, and he did not apply his brakes after observing this situation. Instead, he attempted to merge into the right lane to circumvent the stopped traffic. As he was merging into that lane, he looked to make sure it was clear and discovered that another vehicle had pulled into the lane. Thereafter, he swerved back into the left lane and struck Kramer's vehicle still traveling at a rate of twenty to twenty-five miles per hour.

Given these facts, only one conclusion can be drawn: Donahoe was traveling at an excessive rate of speed in traffic, he had observed vehicles at a complete stop, and he did not look *before* he attempted to negotiate his van into the right lane, but only *as* he tried to move into that lane.

The Court of Appeals concluded, based on these facts, that Donahoe was negligent as a matter of law, and that his negligence created the peril and was the cause of the phantom car suddenly appearing in the path of his van.

We believe the Court of Appeals' recitation of the facts clearly does not afford Donahoe the benefit of all fair inferences which may be drawn from the evidence. Donahoe was the only eyewitness to the accident. Kramer testified that she did not become aware of Donahoe's vehicle until she heard screeching tires and felt the impact of his vehicle. Thus, we must glean the facts of this case from Donahoe's undisputed testimony.

According to Donahoe, as he was clearing the preceding intersection, he saw traffic ahead of him in the left-hand lane slowing down (not completely stopped) for an upcoming traffic light. He was not attempting to merge into the right lane to circumvent stopped traffic, but rather because he needed to be in the right lane to veer right at an approaching fork/split in the road. When he saw the cars in front of him slowing down, he decelerated his car, engaged his right turn signal and checked the right-hand lane ahead of him. The right lane was clear at this time. He checked his right mirror, then glanced over his right shoulder to check his "blind-spot," an action which took "a fraction of time." As he looked forward again, he started merging into the right lane when, for the first time, he saw a blue car beginning to emerge from a parking lot and pull rapidly into the right lane some 20 to 30 feet in front of him. Donahoe's van was approximately one-quarter of the way into the right lane at this time and was traveling at a speed of 25 to 30 miles per hour. The speed limit was 35 miles per hour. Donahoe swerved left to avoid hitting the emerging vehicle, and as he did so, he saw Kramer's car stopped in the left lane. He swerved right to avoid hitting her car and applied his brakes, but unfortunately hit the right rear of Kramer's vehicle.

■■ Given these facts, which we believe more fairly afford Donahoe the benefit of all inferences which may be drawn from his testimony, it cannot be said that Donahoe was negligent as a matter of law. The law of Kentucky requires drivers to operate their vehicles in "a careful manner, with regard for the safety and convenience of pedestrians and other vehicles upon the highway." KRS 189.290(1). A driver of an automobile that strikes another in the rear is not subject to strict liability, but rather must be proven to have violated the duty of ordinary care before he can be found to be at fault. *See Lucas v. Davis,* Ky., 409 S.W.2d 297, 299–300 (1966). Based on the facts viewed in the light most favorable to Donahoe, we believe the trial court did not err in submitting the question of Donahoe's negligence to the jury, and we cannot say the jury's verdict absolving Donahoe of liability was so palpably or flagrantly against the weight of the evidence so as to indicate that it was reached as a result of passion or prejudice. Accordingly, we reverse the Court of Appeals' decision, and we reinstate the jury verdict in favor of Donahoe.

Our resolution of the first issue in this case renders moot the issue of whether the trial court correctly severed Kramer's claim against USAA from her claim against Dona-

hoe. Therefore, we need not address that controversy here.

As for the final issue of whether USAA is entitled to reimbursement from State Farm for the amounts USAA advanced to or on behalf of Kramer in order to preserve its subrogation rights, our recent decision in *Nationwide Mutual Ins. Co. v. State Farm Auto. Ins. Co.*, Ky., 973 S.W.2d 56 (1998), controls. In that case, which was not final at the time the briefs in the instant case were filed, but which since has become final, we held: [T]he UIM carrier must determine its own destiny: if it chooses to substitute payment based on the risk evaluation of the liability carrier, it is bound by that assessment...." *Id.* at 58. Although *Nationwide* dealt with a situation in which the jury awarded the plaintiff an amount less than the amount the plaintiff's UIM carrier had advanced to preserve its subrogation rights, the rationale applies equally to a situation in which the jury awards the plaintiff nothing. The bottom line is that the UIM bears the risk when it chooses to thwart a proposed settlement between the plaintiff and the alleged tortfeasor by substituting payment of the settlement amount. For this reason, USAA is not entitled to reimbursement from State Farm or Donahoe.

For the reasons set forth above, the decision of the Court of Appeals is reversed and the case is remanded to the Jefferson Circuit Court for reinstatement of the jury's verdict.

LAMBERT, C.J.; and JOHNSTONE, STEPHENS, and WINTERSHEIMER, JJ., concur. COOPER, J., concurs in part and dissents in part by separate opinion, in which GRAVES, J., joins.

COOPER, Justice, concurring in part and dissenting in part.

I concur with that portion of the majority opinion which holds that the evidence in this case was sufficient to support the verdict of the jury. I dissent from that portion of the opinion which denies USAA its jural right of indemnity[1] for the same reasons expressed in my dissenting opinion in *Nationwide Mut. Ins. Co. v. State Farm Automobile Ins. Co.*, Ky., 973 S.W.2d 56, 59–61 (1998).

State Farm was the liability carrier for the alleged tortfeasor, Donahoe, and willingly offered to pay its policy limits of $50,000.00 to settle Kramer's claim against Donahoe. Kramer agreed to accept this offer, but desired to retain the right to pursue her UIM claim against USAA. Following the arcane procedure devised in *Coots v. Allstate Ins. Co.*, Ky., 853 S.W.2d 895 (1993), USAA was required to pay Kramer the $50,000.00 offered by State Farm or otherwise forfeit its jural right of indemnity against Donahoe in the event Kramer received a verdict in excess of State Farm's policy limits. As we now know, the jury found that Donahoe was not at fault in the accident, thus neither State Farm nor USAA owed anything to Kramer. Kramer, of course, can retain the $50,000.00 settlement negotiated by State Farm but paid by USAA. Under this set of facts, both logic and *Coots*, 853 S.W.2d at 902, dictate that State Farm, the liability carrier, which had primary coverage and which was willing to pay its policy limits to settle Kramer's claim, should reimburse the substituted payment to USAA, the UIM carrier, which had excess coverage and which was unwilling to pay Kramer anything, but was required to do so to protect its jural right of indemnity. Nevertheless, our decision in *Nationwide, supra*, requires USAA to forfeit its property in order to protect what we have deemed to be a constitutional right. In my view, this result is nothing less than a deprivation of property without due process of law, which is proscribed by the Fifth Amendment to the United States Constitution and by Sections 1 and 26 of the Constitution of Kentucky. *Cf. City of Louisville v. Kuhn*, 284 Ky. 684, 145 S.W.2d 851, 853 (1940). *See also BMW of North America, Inc., v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), holding that due

[1]. While the author of this dissenting opinion does not subscribe to the jural rights doctrine, *Williams v. Wilson*, Ky., 972 S.W.2d 260, 269–76 (1998) (dissenting opinion), if such a doctrine is to exist in this Commonwealth, it must be applied with consistency. The right of indemnity has been determined by this Court to be a jural right. *Kentucky Util. Co. v. Jackson Co. R.E.C.C.*, Ky., 438 S.W.2d 788, 790 (1968).

**784**

process can be violated by state judicial procedures as well as by legislative enactments. "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *Id.,* 517 U.S. at 572, 116 S.Ct. at 1597–98, n. 19, quoting *Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978).

GRAVES, J., joins this opinion, concurring in part and dissenting in part.