RENDERED:  OCTOBER 22, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0702-MR

JOHN GASH AND ALLEN
ELECTRIC, INC.                                                              APPELLANTS


                    APPEAL FROM JEFFERSON CIRCUIT COURT
v.              HONORABLE ANN BAILEY SMITH, JUDGE
                         ACTION NO. 17-CI-001462


RUBY BRANGERS, AS
ADMINISTRATRIX FOR THE
ESTATE OF ANTHONY BRANGERS,
SR.                                                                           APPELLEE

AND


NO. 2019-CA-0739-MR

RUBY BRANGERS, AS
ADMINISTRATRIX FOR THE
ESTATE OF ANTHONY BRANGERS,
SR.                                                                    CROSS-APPELLANT


              CROSS-APPEAL FROM JEFFERSON CIRCUIT COURT
v.              HONORABLE ANN BAILEY SMITH, JUDGE
                         ACTION NO. 17-CI-001462

JOHN GASH AND ALLEN
ELECTRIC, INC.                                    CROSS-APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, McNEILL, AND L. THOMPSON, JUDGES.

McNEILL, JUDGE:  John Gash and Allen Electric, Inc. ("Gash") appeal from a

judgment of the Jefferson Circuit Court entered on April 3, 2019, awarding

$107,070.56 to Anthony Brangers, Sr. ("Brangers") following a jury trial.  Ruby

Brangers,[1] as Administratrix for the Estate of Anthony Brangers, Sr. ("the Estate")

cross-appeals from the same judgment.  For the following reasons, we affirm.

FACTS

On November 26, 2012, Brangers was driving home after work on I-

264 in Louisville when he came upon rush hour traffic near the I-65 exit.  Brangers

was in the second to right lane, attempting to take the exit to I-65 South.  Brangers

testified that before you get to the I-65 exit, there is a rise in the highway which

---

[1] Anthony Brangers, Sr. died on April 30, 2019.  Ruby Brangers was appointed administratrix of his estate on July 22, 2019.  On November 14, 2019, Ruby Brangers, in her capacity as administratrix, was substituted as a party for Appellee/Cross-Appellant Anthony Brangers, Sr. by order of this Court.

you cannot see over. As he got to the top of the rise, he noticed that traffic was "slow and backing up" ahead and "gridlocked."

Directly in front of Brangers, a car was completely stopped. Brangers slowed and came to a complete stop, leaving a vehicle's width between his Ford F-150 and the car in front of him. Brangers testified that traffic was moving slowly to his left but was pretty much at a standstill. Once stopped, Brangers glanced into his rearview mirror and saw a car come up behind him. Brangers remembers being stopped for less than a minute when his vehicle was hit from behind. He did not see the accident happen. At the time of the accident, Brangers was waiting for traffic in front of him to move so that he could exit onto the I-65 ramp.

Gash was also traveling on I-264 in the second to right lane in the minutes leading up to the accident. Gash testified he was attempting to get into the far-right lane to take the exit to I-65 North and estimated he was traveling between 35-40 miles an hour, trying to maintain speed with the cars in the right lane so that he could safely merge. Because his work van did not have a rearview mirror, he was glancing back and forth between the traffic ahead and his side mirror while attempting to merge.

Gash did not notice the vehicles stopped ahead of him until it was too late. His vehicle collided with the vehicle in front of him which in turn hit Brangers' vehicle. Gash agreed there were at least two vehicles stopped directly in

front of him, although he believed the other lanes of traffic were moving. Gash conceded that the lane to exit onto I-65 South often backs up during rush hour and that he was aware traffic could stop in front of him at any time. While he testified he was not anticipating a full, complete stop in the road, he nevertheless admitted the wreck could have been avoided had he been looking ahead and seen the vehicles stopped.

Following the accident, Brangers complained of head, neck and back pain and was diagnosed with a neck and back strain. He underwent conservative treatment in the form of physical therapy. When his symptoms did not improve, Brangers visited Chambers Medical Group and was again diagnosed with neck and back strains. He had an MRI performed and did more physical therapy. After the MRI showed multilevel degenerative disc disease, Brangers began treatment with an orthopedic surgeon who administered steroid injections.

While the steroid injections provided temporary relief, Brangers sought further treatment from Dr. Christopher Shields, a neurosurgeon, on July 30, 2013. Dr. Shields performed more diagnostic testing and after further treatment did not relieve Brangers' symptoms, recommended that Brangers undergo surgery to address his degenerative disc disease. Brangers' surgery was scheduled for April 14, 2015 but was cancelled on the day of surgery after complications with anesthesia. After the failed surgery, Brangers did not seek any further treatment.

Following the evidence, the trial court directed a verdict in favor of Brangers on the issue of Gash's liability for the accident. The trial court also directed a verdict on $42,070.56 of Brangers' medical expenses. The jury then considered the remaining items of damages and awarded Brangers $95,000.00 in pain and suffering. On April 3, 2019, the trial court entered a judgment against Gash for $107,070.56 plus interest. This appeal followed. Further facts will be set forth as necessary below.

## ANALYSIS

As an initial matter, Gash's appellate brief did not cite to where in the record his arguments were preserved as required by CR[2] 76.12(4)(c)(v). Gash has attempted to remedy this in his reply brief as is allowed by case law, *Hollingsworth v. Hollingsworth*, 798 S.W.2d 145, 147 (Ky. App. 1990); however, CR 76.12(4)(b)(i) limits a combined appellant's reply/cross-appellee brief to thirty pages. While Gash's brief complies with the letter of the rule's 30-page limit, 25 pages of Gash's brief are a substantive reply to the appellee's brief and only three are devoted to Brangers' cross-appeal, seemingly violating the spirit of CR 76.12(4)(b)(i) when read in conjunction with its five-page limit on reply briefs. However, because Gash's combined appellant's reply/cross-appellee brief technically complies with the rule, we will resolve this case on the merits.

---

[2] Kentucky Rules of Civil Procedure.

Gash first argues the trial court erred in directing a verdict as to his liability and Brangers' non-liability for the accident, failing to view the evidence in the light most favorable to him. He points to his trial testimony that he was operating his vehicle with reasonable care, looking back and forth between the traffic ahead and his side mirror as he was attempting to change lanes. He also notes he was traveling well below the speed limit.

Gash also argues there is a jury question as to whether Brangers was operating his vehicle in a reasonable manner by stopping on the interstate. He notes Brangers' testimony that he stopped when he saw the traffic ahead because he "did not want to get into that mess," apparently leaving enough room between his vehicle and the one in front of him that another car was able to pass in between. Gash also argues that "the jury could have found that . . . [Brangers] came to an inappropriate/prolonged stop," pointing to Brangers' testimony that the car in front of him had moved on prior to the accident.

The standard of review for an appeal of a directed verdict has been stated as follows:

> A trial judge cannot enter a directed verdict unless . . . there are no disputed issues of fact upon which reasonable minds could differ. Where there is conflicting evidence, it is the responsibility of the jury to determine and resolve such conflicts. A motion for directed verdict admits the truth of all evidence favorable to the party against whom the motion is made. Upon such motion, the court may not consider the credibility of evidence or

the weight it should be given, this being a function reserved for the trier of fact. The trial court must favor the party against whom the motion is made, complete with all inferences reasonably drawn from the evidence. The trial court then must determine whether the evidence favorable to the party against whom the motion is made is of such substance that a verdict rendered thereon would be "palpably or flagrantly" against the evidence so as "to indicate that is was reached as a result of passion or prejudice." In such a case, a directed verdict should be given. Otherwise, the motion should be denied.

It is well-argued and documented that a motion for directed verdict raises only questions of law as to whether there is any evidence to support a verdict. While it is the jury's province to weigh evidence, the court will direct a verdict where there is no evidence of probative value to support the opposite result and the jury may not be permitted to reach a verdict based on mere speculation or conjecture.

*Gibbs v. Wikersham*, 133 S.W.3d 494, 495-96 (Ky. App. 2004) (citations omitted).

Having reviewed the record, we cannot say the trial court erred in granting a directed verdict in favor of Brangers as to Gash's liability for the accident or as to Brangers' non-liability. In granting the directed verdict, the trial court found that either because of inattention or looking away too long, Gash was unable to avoid hitting the stopped cars due to his speed. The court noted that, unlike Gash, both Brangers and the car behind him were able to safely stop. In making its determination, the court acknowledged Gash's testimony that he reduced his speed from an estimated 40-50 miles an hour to an estimated 35 miles

-7-

an hour as he entered the congested area. Thus, the trial court viewed the evidence in the light most favorable to Gash.

However, even granting Gash all reasonable inferences, Gash testified he was aware the lane exiting onto I-65 South often backs up at rush hour and admitted the accident could have been avoided had he been looking ahead the entire time, or had he not been attempting to merge. Further, and as the trial court noted, both Brangers and the car behind him were able to safely stop, suggesting Gash was not operating his vehicle at a reasonable speed considering the circumstances. A directed verdict is proper "where there is no evidence of probative value to support the opposite result . . . ." *Gibbs*, 133 S.W.3d at 496.

Here, there was no evidence of any negligence on Brangers' part. Brangers testified he was driving in the second to right hand lane which exited onto to I-65 South. When he came over a rise in the highway he noticed traffic congestion ahead and a car stopped in front of him. Even assuming the vehicle had moved on in some moment before the accident, Brangers testified he still could not move forward because the exit ramp was full. Gash has cited no authority, nor is this Court aware of any, imputing any liability for a rear-end collision in a fact scenario such as this.

Like the trial court, we believe the cases cited by Gash are distinguishable as all involve sudden emergencies. In his brief, Gash particularly

relies upon *USAA Casualty Insurance Company v. Kramer*, 987 S.W.2d 779 (Ky. 1999). In that case, defendant's vehicle struck plaintiff's vehicle from behind while plaintiff was stopped at a traffic light. Defendant had been in the left, inside lane attempting to merge into the right lane to turn at an upcoming intersection when he noticed plaintiff's car slowing for an upcoming traffic light. As defendant attempted to merge, a car pulled out into the right lane in front of him from a nearby parking lot. Unable to avoid the vehicle in the right lane, defendant swerved back into the left lane and noticed plaintiff's vehicle had stopped. Defendant tried to swerve back right to avoid plaintiff's vehicle but hit the right rear of her vehicle.

At trial in *Kramer*, the jury returned a verdict in favor of the defendant. On appeal, a panel of this Court held that plaintiff was entitled to a directed verdict as to defendant's liability. On discretionary review, our Supreme Court reversed, holding the Court of Appeals had not viewed the evidence in the light most favorable to the defendant, and that when so viewed, "it cannot be said that [defendant] was negligent as a matter of law." *Kramer*, 987 S.W.2d at 782.

Gash argues "*Kramer* is especially instructive . . . [there], the trial court properly submitted the issue of fault to jury, which then exonerated the rear ending driver who, like Mr. Gash, was checking his mirrors in an attempt to merge and did not perceive a situation developing in front of him." However, unlike in

*Kramer*, here, Gash should have perceived the situation in front of him. That is the distinction implicitly recognized by the trial court separating this case from those involving a sudden emergency.

Gash testified that it was common for the I-65 ramp to be congested during rush hour. Thus, he should have been aware that he might encounter slowed or stopped traffic as he approached the exit. While he did reduce his speed, he was still traveling at the speed of traffic in the lane next to him. Even viewing the evidence in the light most favorable to Gash, his admissions that the lane to I-65 South could back up at any time, that he was going 35 miles an hour, and that he was not focused on the road ahead of him because he was attempting to merge were all undisputed facts. The trial court held Gash's failure to reduce his speed and/or focus on the road in front of him, knowing the potential for traffic congestion, was a violation of ordinary care as a matter of law. This finding was not clearly erroneous. *Combs v. Stortz*, 276 S.W.3d 282, 290 (Ky. App. 2009) (citation omitted) ("A reviewing court may not disturb a trial court's decision on a motion for directed verdict unless that decision is clearly erroneous.").

Gash next contends the trial court erred in directing a verdict as to $42,070.56 of Brangers' medical expenses, arguing disputed issues of fact exist as to the relatedness of the expenses. However, during the bench conference discussing Brangers' motion for directed verdict, Gash's counsel agreed these

-10-

expenses were related to the motor vehicle accident. Instead, he argued the relatedness of the medical expenses was still an issue for the jury, because the jury was entitled to believe or disbelieve the expert witness testimony as to relatedness, even if that testimony was uncontradicted. Gash never argued, as he does on appeal, that there was a genuine dispute as to the relatedness of the medical expenses. Therefore, we find this argument is not preserved for our review. "When a trial court never has the opportunity to rule on a legal question presented to an appellate court, an appellant presents a different case to the appellate court than the one decided by the trial court." *Norton Healthcare, Inc. v. Deng*, 487 S.W.3d 846, 852 (Ky. 2016) (citing *Kennedy v. Commonwealth*, 544 S.W.2d 219, 222 (Ky. 1976) (prohibiting appellant's "feed[ing] one can of worms to the trial judge and another to the appellate court")). "The proper role for an appellate court is to review for error–and there can be no error when the issue has not been presented to the trial court for decision." *Norton*, 487 S.W.3d at 852.

However, Gash did argue below, and has on appeal, that a directed verdict was improper because the jury was entitled to disbelieve the expert witness testimony that Brangers' medical expenses were related to the motor vehicle accident. In support, he cites *Rippetoe v. Feese*, 217 S.W.3d 887 (Ky. App. 2007); *Lewis v. Grange Mutual Casualty Company*, 11 S.W.3d 591 (Ky. App. 2000); *Carlson v. McElroy*, 584 S.W.2d 754 (Ky. App. 1979); and *Rogers v. Belluscio*,

No. 2006-CA-001804-MR, 2007 WL 3037722 (Ky. App. Oct. 19, 2007). These cases merely stand for the proposition that when issues of fact exist as to whether plaintiff's claimed medical expenses are related to the injuries underlying the cause of action, the question is one for the jury. As noted above, Gash agreed that the $42,070.56 of medical expenses in question were related to the motor vehicle accident. He cannot now argue that these expenses were unrelated.

Gash's third contention is that the trial court erred in failing to give liability and apportionment of fault instructions related to Brangers' potential negligence. An appellate court reviews a trial court's decision of whether to give a jury instruction under the abuse of discretion standard. *Sargent v. Shaffer*, 467 S.W.3d 198, 203 (Ky. 2015). "[A] trial court abuses its discretion when its decision is arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* (citation omitted).

"[F]ault may be apportioned only among those against whom the evidence of liability was sufficient to allow submission of the issue of fault to the jury." *Morgan v. Scott*, 291 S.W.3d 622, 634 (Ky. 2009). Here, as noted above, especially in light of Gash's own statements, there was no evidence Brangers was liable for the accident. "When, under the evidence, only one party is shown to have caused an injury, fault and its resulting liability cannot legally or rationally be apportioned elsewhere." *Id.* Therefore, the trial court did not abuse its discretion

-12-

in declining to give liability and apportionment of fault instructions related to Brangers' potential negligence.

Gash argues the trial court also erred in refusing to give a mitigation of damages instruction. Again, we disagree. "Under Kentucky law, a party is required to mitigate his or her damages. So if a party introduces evidence that another party has failed properly to mitigate his or her damages, the jury should be given a failure-to-mitigate-damages instruction." *Id.* at 640. Thus, the question is "whether there was sufficient specific evidence introduced to support a mitigation of damages instruction." *Id.*

Gash points to evidence that Brangers continued to work a physically demanding job in the months following the accident, sought no further treatment after April 13, 2015, and refused to take prescription pain medication. He argues that from this evidence "a jury could easily have easily found that Mr. Brangers failed to mitigate his damages."

However, "damages may be mitigated only in proportion to the aggravation of injuries by the injured person's improper conduct." *Carney v. Scott*, 325 S.W.2d 343, 347 (Ky. 1959). Here, there was no evidence that Brangers' injuries were increased in any way by his continuing to work following the accident. As to Brangers' failure to seek out further treatment after his aborted surgery on April 14, 2015, Brangers testified that his previous efforts at

conservative treatment, such as physical therapy and steroid injections, only provided temporary relief and were not effective in treating his injuries long term. "A victim does not fail to mitigate damages by refusing to undergo treatment that would not significantly alleviate the disability or holds little promise for successful recovery." 22 AM. JUR. 2d *Damages* § 387 (2021) (citations omitted).

Finally, as to Brangers' refusal to take prescription pain pills, Brangers testified he did not like to take pain pills and was afraid he would injure himself further if he dulled the pain to where he could not feel it. "To show that an injured person failed to mitigate damages, a tortfeasor must demonstrate that injured party's conduct after the accident was unreasonable and that unreasonable conduct resulted in aggravating the harm." 22 AM. JUR. 2d *Damages* § 378 (2021) (citations omitted). Here, there was no evidence that Brangers' conduct in refusing prescription pain medication was unreasonable. Brangers did take over-the-counter pain medication as well as other medicine to treat his symptoms. Further, there was no expert testimony that Brangers' failure to take prescription pain medication increased his injury. Therefore, the trial court did not abuse its discretion in refusing to offer a failure-to-mitigate-damages instruction.

Next, Gash argues the trial court erred in failing to give his requested admonition and jury instruction about an unrelated medical event Brangers suffered in 2019 which rendered him disabled and resulted in his appearing at trial

in a wheelchair.  Before opening statements, the trial court gave the following

admonition:

> During the trial, you will hear evidence and testimony
> about a 2012 automobile accident involving Plaintiff
> Anthony Brangers and Defendant John Gash, and injuries
> claimed as a result of that 2012 accident.  Plaintiff
> Anthony Brangers also suffered a medical event in
> February 2019 that resulted in medical care and
> treatment, including hospitalization and the need for a
> wheelchair.  The February 2019 medical event was not
> caused by, and not related to, the 2012 accident involving
> Plaintiff Anthony Brangers and Defendant John Gash.

Gash's requested admonition was as follows:

> During the trial, you will hear evidence and testimony
> about a 2012 automobile accident involving Plaintiff,
> Anthony Brangers, and Defendant John Gash and injuries
> claimed as a result of that 2012 accident.  Plaintiff,
> Anthony Brangers, also suffered a medical event in
> February 2019 that resulted in medical care and
> treatment, including hospitalization; nursing home care;
> the need for narcotic pain medication, a wheelchair and a
> walker; and ongoing pain.  The February 2019 medical
> event was not caused by and not related to the 2012
> accident involving Plaintiff, Anthony Brangers, and
> Defendant, John Gash.  The February 2019 medical event
> caused pain and suffering and a deterioration in the
> physical condition of Plaintiff, Anthony Brangers.
> Plaintiff, Anthony Brangers, is not entitled to recover,
> and you shall not award, any damages, including
> damages for medical expenses, pain and suffering, or loss
> of enjoyment of life that are attributable to the February
> 2019 medical event.

> Comparing the two, Gash's requested admonition mentions Brangers'

hospitalization, nursing home care, narcotic pain medication, and ongoing pain

from the 2019 medical event, as well as emphasizes that the jury should not award any damages associated with the unrelated 2019 medical incident. Beyond that, the two admonitions are almost identical. Gash argues the trial court's admonition was insufficient because it failed to make clear that Brangers' "severe disabilities and wheelchair were [not] caused by or associated with the accident at issue."

We disagree. The trial court's admonition specifically states the 2019 medical event resulted in Brangers' need for a wheelchair and was not caused by or related to the 2012 accident. "A jury is presumed to follow an admonition to disregard evidence and the admonition thus cures any error." *Johnson v. Commonwealth*, 105 S.W.3d 430, 441 (Ky. 2003) (citation omitted).

Similarly, Gash contends the trial court erred in failing to give a jury instruction "limiting their award of damages for medical bills or pain and suffering to not include the February 2019 medical event." "It is within a trial court's discretion to deny a requested instruction, and its decision will not be reversed absent an abuse of that discretion." *Olfice, Inc. v. Wilkey*, 173 S.W.3d 226, 229 (Ky. 2005) (citation omitted). In Kentucky, the general rule is that jury instructions "should provide only the bare bones, which can be fleshed out by counsel in their closing arguments if they so desire." *Id.* at 228 (citation omitted). In fact, Gash's counsel did exactly this, re-reading the trial court's admonition to the jury during closing arguments concerning the 2019 incident and its

-16-

unrelatedness to the 2012 accident and specifically requesting that the jury award damages only related to the 2012 accident, "and nothing else." The trial court did not abuse its discretion in refusing to give Gash's requested admonition on the 2019 medical event.

Finally, Gash alleges the trial court erred in failing to exclude Dr. Shields' testimony that the automobile accident brought Brangers' preexisting conditions into "disabling reality." Our standard of review of a trial court's evidentiary rulings is abuse of discretion. *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 577 (Ky. 2000). Gash complains Dr. Shields' use of the words "disabling reality" coupled with Brangers' use of a wheelchair at trial was highly prejudicial and misled the jurors into thinking that Brangers was disabled because of the accident. Instead, he argues, Dr. Shields should have used the term "aggravation."

Here, we find the trial court did not abuse its discretion. Considering Dr. Shields' testimony as a whole, any risk of jury confusion was minimal. On cross-examination, Dr. Shields testified Brangers' pre-existing conditions were aggravated by the accident, using Gash's suggested term. Further, right before the testimony in question, Dr. Shields referenced a medical record that stated Brangers' condition had been "aggravated." Thus, it is unlikely, in context, that the jurors misunderstood Dr. Shields testimony that "[Brangers] had a dormant

condition with the arthritis which was aroused into disabling reality as a result of the accident," as testimony that Brangers was disabled or receiving disability.

Further, the trial court offered the following admonition to clarify any potential confusion: "During the trial, you've heard testimony that the Plaintiff, Anthony Brangers, had pre-existing conditions in his spine that were brought into disabling reality by the 2012 accident. You will not hear evidence that the Plaintiff has been declared to be disabled as a result of the accident."

While Gash contends the admonition given by the trial court was insufficient, its language was taken directly from Gash's proposed admonition. The additional language in the proposed instruction omitted by the trial court merely repeated information already in evidence, namely, that the phrase "disabling reality" did not mean that Brangers was "disabled" because of the accident, only that his pre-existing conditions had been aggravated. The trial court did not err in refusing to give Gash's requested admonition.

Brangers has also filed a cross-appeal, arguing the trial court erred in failing to direct a verdict as to all past medical expenses, including $15,406.42 related to the aborted April 2015 back surgery. We disagree. "A reviewing court may not disturb a trial court's decision on a motion for directed verdict unless that decision is clearly erroneous." *Combs*, 276 S.W.3d at 290 (citation omitted). We "must ascribe to the evidence all reasonable inferences and deductions which

support the claim of the prevailing party." *Bierman v. Klapheke*, 967 S.W.2d 16, 18 (Ky. 1998).

Here, Dr. Grossfeld testified that the 2015 surgery was not caused by the 2012 accident, but instead was related to Brangers' degenerative disc disease. She disagreed with Dr. Shields that Brangers' surgery was related to conditions aggravated by the accident. When asked whether she agreed that the purpose of the 2015 surgery was to treat conditions that were aggravated by the motor vehicle accident, Dr. Grossfeld testified:

> the surgery based on the records I reviewed from Doctor Shields, was to treat his underlying osteoarthritis. Osteoarthritic flare-ups can last for periods of time, but then they get less until the arthritis progresses. So, his arthritis is progressive, and it was getting worse, and he was continuing to have pain, which is why Doctor Shields was recommending the surgery for arthritis. It would have been different if, for example, he had an acute finding that showed a disc herniation at the time of the injury . . . then Doctor Shields was going to do a microdiscectomy. That would have been directly related. So that's where . . . I differ . . . .

Thus, there were disputed issues of fact upon which reasonable minds could differ as to whether Brangers' 2015 surgery was related to the 2012 accident, and the trial court did not err in denying a directed verdict as to Brangers' expenses related to the 2015 surgery.

Based on the foregoing, the judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.


BRIEFS FOR APPELLANTS/CROSS-APPELLEES:

David K. Barnes
Louisville, Kentucky

BRIEF FOR APPELLEE/CROSS-APPELLANT:

David M. Scott
Nicholas K. Haynes
Louisville, Kentucky

Kevin C. Burke
Jamie K. Neal
Louisville, Kentucky