Addie H. CARLSON, Appellant,

v.

Mary V. McELROY and Regina
McElroy, Appellees.

ALLSTATE INSURANCE COMPANY,
Appellant,

v.

Mary V. McELROY, Regina McElroy,
Addie Carlson and U.S.A.A. Insurance
Company, Appellees.

and

ALLSTATE INSURANCE COMPANY,
Appellant,

v.

Addie CARLSON, Appellee.

Court of Appeals of Kentucky.

July 20, 1979.

Reford H. Coleman, Collier, Arnett, Coleman & Cooper, Elizabethtown, for Mary V. McElroy, Regina McElroy and U.S.A.A. Ins. Co.

David F. Broderick, Cole, Harned & Broderick, Bowling Green, for Allstate Ins. Co.

G. D. Milliken, Jr., Milliken & Milliken, Bowling Green, for Addie H. Carlson.

Before COOPER, HAYES and WINTERSHEIMER, JJ.

HAYES, Judge.

Addie Carlson was sitting in her automobile which was parked in the parking lot on the Western Kentucky University campus in Bowling Green. Mary McElroy, operating an automobile owned by her mother Regina McElroy, negligently drove her automobile into the rear of the Carlson car. The fact that the accident was due to the negligence of Mary McElroy is not disputed.

There was evidence introduced that the McElroy car was travelling at about five miles per hour (5 m. p. h.) at impact; that the collision was merely a "bump" which did not move the Carlson auto, which was driven from the scene by Mrs. Carlson. Even though Carlson, at the scene, advised a Western Kentucky University police officer and Mary McElroy that she was not injured, she did see her family doctor the next day after the accident. Her complaint was that she had suffered a cervical injury as a result of the accident.

About a week after the accident Carlson was admitted to the Greenview Hospital in Bowling Green where she remained for one month. While there, an orthopedic surgeon was consulted and Carlson was assigned to physical therapy.

Three days after dismissal from the hospital, Mrs. Carlson was readmitted for a bloodclot (thrombophlebitis) in her left leg. Testimony was introduced that Carlson had been having problems with broken veins behind her left leg, for which she wore support hose and received hormone medication for at least three (3) years before this accident. Treatment on this second visit to the hospital consisted mainly of anticoagulant medication for the bloodclot.

A neurosurgeon examined Carlson during this second visit to the hospital, and he determined that Carlson's symptoms were psychosomatic and had no organic etiology. Neither the orthopedic doctor nor the neurosurgeon related the phlebitis with Carlson's neck complaints or the accident.

Carlson then sought medical treatment from neurosurgeons in Nashville, Tennessee, and eventually from a chiropractor in Bowling Green; was readmitted to the hospital on at least two more occasions, all for which the Allstate Insurance Company, Carlson's insurer, paid Carlson $9,140.37 under her personal injury protection (PIP) clause of insurance. Carlson filed suit against the McElroys in October, 1976. Previous to the trial of this action in February, 1978, Carlson was involved in a second accident in October, 1977.

The Allstate Insurance Company intervened and brought in the insurer of the McElroys, the U. S. A. A. Insurance Company, claiming a subrogation right under KRS 304.39–070.

The trial court directed a verdict for Carlson on the issue of liability and submitted the case to the jury on the question of damages only. The jury awarded Carlson no damages and further wrote on their verdict, "We the undersigned believe that the plaintiff should not receive any compensation as a result of this complaint."

On these appeals by Carlson and Allstate Insurance Company, Carlson complains of the instructions given by the trial court to the jury which she alleges caused the jury to speculate that the injuries suffered by Carlson were not from this accident, when all the medical proof was to the contrary. Allstate asserts that they are still entitled to subrogation from U. S. A. A. Insurance Company even though Carlson, Allstate's insured, received nothing from the McElroys.

The trial court instructed the jury, in instruction number two, as follows:

The Court instructs the Jury that if they believe from the evidence that all, or

any part, of the injuries of which the Plaintiff complains were not caused by her automobile being struck by Defendant's automobile, but were caused at some other time, or occurred from some other cause, you will not find for Plaintiff on account of any of the injuries which you may believe from the evidence were caused at some other time or occurred from some other cause, but will only find such damages as you may believe Plaintiff sustained on account of the injuries which she suffered by being struck by Defendant's automobile.

A careful review of the transcript of evidence and the depositions in this case indicate to us that there was some question, even in the minds of the medical experts, with the possible exception of the family doctor and the chiropractor, whether Carlson received any injury as a result of this accident. Contrary to what Carlson contends in her brief, we do not see the evidence as all one-sided for her. Obviously the jury didn't either.

■ The fact Carlson received a directed verdict on liability does not necessarily mean she was entitled to some damages, if, as here, the jury believed she was not injured, or, if so, she was injured as a result of some other cause. In any event, the jury was not bound to accept as the absolute truth the testimony of either Carlson or her doctors relating to her injuries, and having the opportunity to observe Carlson giving her testimony and to hear first hand all the other evidence in arriving at their verdict, the jury could have believed Carlson grossly exaggerated the extent of her injuries, if any, or that her injuries were not as a result of this accident. *Davidson v. Vogler*, Ky., 507 S.W.2d 160 (1974) and *Wilkins v. Hopkins*, 278 Ky. 280, 128 S.W.2d 772 (1939).

■ Due to the peculiar facts of this case (some evidence of pre-existing medical problems and evidence of a prior and succeeding accident) we believe it was proper for the trial court to instruct as it did. Carlson's reliance on the case of *Reitze v. Williams*, Ky., 458 S.W.2d 613 (1970), for the proposition that the instruction was er-

roneous is misplaced. In *Reitze*, the court held such an instruction as given in the instant case was erroneous; however in *Reitze*, there was *no* evidence of any pre-existing injury nor a subsequent accident. In the instant case, instruction number one given by the trial court did not contain, with reference to Carlson's injuries, the "if any" provision required by *Hetrick v. Willis*, Ky., 439 S.W.2d 942 (1969). Under the facts of this case, we believe the McElroys were entitled to instruction number two.

■ Having determined that the jury's award of no damages to Carlson was proper, Allstate's subrogation claim against U. S. A. A. Insurance Company, the insurer of the McElroys, must necessarily fail. Subrogation, either legal or conventional, is derivative in nature, and in this case, Allstate's claim against the reparations obligor of the McElroys reached no greater status than Carlson's claim against the McElroys.

■ Allstate argues that it is entitled to repayment from U. S. A. A. Insurance Company for the sum total of PIP benefits paid to Carlson ($9,140.37) by virtue of KRS 304.39-020(2). We construe subsection (2) of that statute to apply to subrogation rights of a basic reparations obligor against "unsecured" persons or organizations, such as uninsured motorists. Here the McElroys were "secured persons". If Allstate has any claim in the instant case, it would be under subsection (3) of KRS 304.39-070 which states:

(3) A reparations obligor shall have the right to recover basic reparation benefits paid to or for the benefit of a person suffering the injury from the reparation obligor of a secured person as provided in this subsection, . . . .

Of course, Allstate cannot avail itself of the provisions of subsection (3) because the key word in that subsection is "injured person," and since the jury determined Carlson was not an injured person, in this accident, Allstate cannot recover. We realize a factual situation as we have here places the basic reparations obligor in a position of paying out benefits under PIP coverage,

long before, in most instances, a jury determines whether there even was injury with the result that the reparations obligor might have paid gratuitously. However, we are reminded that at least one purpose of the Kentucky No-Fault Law is the prompt payment of medical bills, and that legal duty to pay on behalf of the reparations obligor is not based on fault. Therefore, under the peculiar facts of this case, Allstate was legally bound to pay PIP benefits to Carlson, but its right of subrogation against U. S. A. A. Insurance Company must fail because the injuries Carlson sustained, if any, were not the result of any conduct of U. S. A. A.'s insureds, the McElroys.

The judgments of the trial court are affirmed.

All concur.