Louis LEAKE, Appellant,

v.

BURLINGTON NORTHERN RAILROAD COMPANY, Respondent.

No. 65359.

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 14, 1995.

George L. Fitzsimmons, Patrick J. Hagerty, St. Louis, for appellant.

Thomas J. Prebil, St. Louis, for respondent.

DOWD, Judge.

Plaintiff appeals after a jury awarded him $133,000 in a negligence suit against his employer under the Federal Employers' Liability Act, 45 U.S.C. §§ 51 to 60 (FELA), resulting from an injury Plaintiff sustained after he slipped on ice on Defendant's property. We reverse and remand.

Plaintiff Louis Leake (Employee) worked for Defendant Burlington Northern Railroad Company (Employer) as a conductor. He worked for Employer for approximately 30 years and was 51 years old at the time of trial. In January of 1991, Employee was the freight conductor on a train which stopped in Employer's Cuba, Missouri, yards. It was here Employee slipped on ice and injured his back. Employee has since undergone several surgeries. His physician determined he could never again work as a freight conductor. In late 1991, Employee began receiving railroad disability retirement payments. Prior to trial, Employee filed a Motion in Limine in which he sought to preclude Employer from mentioning the disability benefits during trial. The court sustained this motion. However, during Employee's opening statement the court ruled he injected the disability payments into the case. When Employer objected after Employee's opening statement, the trial court ruled Employer may bring up the payments in a limited manner without mentioning the amount. Employer mentioned the payments during its opening statement, closing argument and when cross-examining Employee.

At trial, Employee asked for approximately $900,000 in damages (including $400,000 to $450,000 in lost wages and $400,000 to $550,000 in pain and suffering). Employee had earned approximately $42,500 annually as a conductor. The jury returned a plaintiff's verdict and awarded him $133,000. Employee filed a Motion for New Trial, or alternatively, for a New Trial on the Issue of Damages. The trial court denied the motions and this appeal followed.

In his first of five points on appeal, Employee alleges trial court error when it admitted evidence of the disability payments because such collateral source evidence is per se inadmissible. Employee argues this influenced the jury to reduce the damage award. The court ruled Employee injected the issue of his retirement disability payments during the following portion of his opening statement:

> So the situation is that [Employee] is unable to return to work for the railroad.... He's had a wage loss already of about a hundred fifteen thousand dollars. Railroad workers are very well paid, they have excellent benefits. [Employee] makes somewhere around forty-three to forty-seven thousand a year.... *and they have benefits that are equal to at least twelve thousand dollars a year on top of that.* But his wage loss alone until now is about a hundred and fifteen thousand dollars.
>
> *To retire, he has to work until he's sixty-five....* So just at fourteen more years at forty-five thousand, ... he has a future wage loss of in excess of six hundred thousand dollars on top of what he's already lost because he can't return to that job (emphasis added).

At the conclusion of Employee's opening statement, the attorneys approached the bench and the following exchange occurred:

> [Employer's Attorney]: Judge, in his opening statement [Employee's attorney] has said that this man can't retire until he's age sixty-five. This man is already receiving railroad retirement. He's age

fifty-one. He's been receiving it for a year—two years.

It's improper for the plaintiff to suggest to this jury that this man can't retire yet. It implies that he doesn't have any income and won't have any income based on the fruits of his efforts while he was employed for those thirty years, that he's not getting any until he gets to be age sixty-five.... He's already receiving a monthly annuity in excess of fifteen hundred dollars. I think [Employee's attorney] has opened the door, and ... I would like to mention ... in my opening statement the fact that he's receiving railroad retirement benefits.

. . . .

[Employee's Attorney]: ... What I said here was that the man had to work to get his regular retirement until he's age sixty-five. It has no bearing on the disability retirement. The disability retirement is a collateral source ... and it's not admissible.

The only thing I mentioned here was that ... he had to continue to work fourteen years to get his regular railroad retirement.... [T]he purpose of that was just to show his future wage loss.

[Employer's Attorney]: Well, I think it's probably a distinction with a difference.... Since [railroad retirement has] been brought up, I think I have the right to get into it.

. . . .

The Court: Well actually what he did say was that the guy had to work another fourteen years before he could receive his normal railroad retirement.

[Employer's Attorney]: But it's misleading in that it infers to the jury that there is no retirement benefit, that this guy is not getting a dime until he's age sixty-five, and that's just not true.

The Court: That is also a point well taken.

[Employee's Attorney]: ... The railroad cannot bring into evidence the fact that he is getting a disability annuity. It's totally inadmissible....

[Employer's Attorney]: He also said in his opening statement, your Honor, that that was an element of damages. He talked about lost wages and then he talked about loss of benefit package. He can't lose it and be getting it.... [T]hat's what he said. He wants to say [Employee] ... lost his railroad retirement benefits, and the man's collecting them every month.

. . . .

[Employer's Attorney]: ... [O]nce the door's been opened, the evidence is admissible.... Plus the fact that he said he's going to be seeking compensation from this jury for the loss of the benefits that he's presently receiving.

The Court: Okay. I'm sustaining your objection.

Although the trial court ruled the jury could hear about the benefits, it cautioned against undue emphasis. Employer made the following reference to the benefits in his opening statement: "He has the ability and the dedication to be employed, and he has not done so.... And in addition to the ability that this gentlemen has, he is presently receiving railroad retirement disability benefits." Employer also emphasized Employee's disability benefits in its four final questions of Employee during cross-examination. Finally, near the end of its closing argument, Employer stated: "[T]he railroad made [rehabilitation] services available to him, and he said no, I don't want them. I can't go back to my job, I don't want anything else. He's got his railroad retirement.... Certainly you need to take that into consideration, too. He's getting railroad retirement every month."

■■■■ We give substantial deference to a trial court's ruling regarding the admissibility of evidence and will not overturn such a decision unless the court abused its discretion. *Brown v. Hamid,* 856 S.W.2d 51, 56 (Mo. banc 1993). We presume discretionary rulings of a trial court are correct. *Anglim v. Missouri Pacific R.R. Co.,* 832 S.W.2d 298, 303 (Mo. banc 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 831, 121 L.Ed.2d 701. However, a trial court abuses its discretion when a ruling shocks one's sense of justice, indicates a lack of consideration, and is clearly against the logic of the circumstances. *Rich-*

*ardson v. State Hwy. & Transp. Comm'n,* 863 S.W.2d 876, 881 (Mo. banc 1993).

■ It is improper for disability pension benefits to be considered by the jury to reduce damages or to show evidence of malingering. *Eichel v. New York Central R.R. Co.,* 375 U.S. 253, 254–55, 84 S.Ct. 316, 317, 11 L.Ed.2d 307 (1963). The Court in *Eichel* stated:

> The Railroad Retirement Act is substantially a Social Security Act for employees of common carriers. * * * The benefits received under such a system of social legislation are not directly attributable to the contributions of the employer, so they cannot be considered in mitigation of damages caused by the employer (citation omitted).
>
> . . . .
>
> In our view the likelihood of misuse by the jury clearly outweighs the value of this evidence. Insofar as the evidence bears on the issue of malingering, there will generally be other evidence having more probative value and involving less likelihood of prejudice than the receipt of a disability pension. Moreover, it would violate the spirit of the federal statutes if the receipt of disability benefits under the Railroad Retirement Act of 1937, 50 Stat. 309, as amended 45 U.S.C. § 228(b)4, were considered as evidence of malingering by an employee asserting a claim under the Federal Employers' Liability Act. *Id.*

■ However, this rule against collateral source evidence in FELA cases is not absolute. If plaintiff injects his financial condition into the proceedings and implies financial distress, defendant may rebut this by showing plaintiff had other financial assistance available. *Moore v. Missouri Pacific R.R. Co.,* 825 S.W.2d 839, 843 (Mo. banc 1992). The evidence of other financial assistance may be used for the narrow purpose of testing the credibility of plaintiff's assertion regarding financial distress. *Lange v. Missouri Pacific R.R. Co.,* 703 F.2d 322, 324 (8th Cir.1983), *Gladden v. P. Henderson & Co. v. Lavino Shipping Co.,* 385 F.2d 480, 484 (3rd Cir.1967).

■ We find the trial court abused its discretion when it ruled Employee opened the door to the disability benefits during his opening statement. Employee merely stated he would have had to work 14 more years to retire; therefore, he would be asking the jury to compensate him for his wage and benefit loss over those 14 years. The information amounted to a statement of expected evidence, how Employee would establish his lost wages and benefits. Plaintiff was seeking to prove the loss of his railroad job brought the loss of a good fringe benefit plan, one that other industries cannot match.

■ What Plaintiff referred to in his opening statement is not similar to an employee claiming he could not continue therapy because he could not afford it, *Moore,* 825 S.W.2d at 842, or an employee claiming he was forced to return to work immediately after surgery because he had no money. *Lange v. Missouri Pacific R.R. Co.,* 703 F.2d 322, 324 (8th Cir.1983). In both these cases, the employees injected their dire financial situation into the case; therefore, collateral source evidence was permitted. Under FELA, an injured employee is entitled to recover damages for any diminution of retirement benefits caused by his injury, and evidence of lost retirement benefits does not open the door to evidence of the receipt of disability benefits absent testimony by plaintiff regarding financial hardship. *Adams v. Burlington Northern R.R. Co.,* 865 S.W.2d 748, 750–51 (Mo.App.W.D.1993). Age-related railroad retirement benefits and railroad disability benefits are separate and distinct benefits with different eligibility rules and requirements. 45 U.S.C. § 231a(a)(3).

Employee did not inject his financial condition nor imply poverty during the opening statement. *Moore,* 825 S.W.2d at 843. He did not "allude to any financial distress for the purpose of appealing to the sympathy or to increase the award of damages." *Mateer v. Union Pacific Systems,* 873 S.W.2d 239, 245 (Mo.App.E.D.1993). The trial court abused its discretion by allowing the jury to consider collateral source evidence. Furthermore, Employer then overly emphasized said evidence in violation of the trial court's directives.

The impact of this error is illustrated by the jury's question sent to the court during deliberations: "What is his pension and his disability income he's getting now and how long will it go?" While the trial court did not give the jury the information it sought, the jury was obviously discussing the disability income during deliberations. As the Supreme Court foretold in *Eichel,* "[T]he likelihood of misuse by the jury clearly outweighs the value of this evidence." 375 U.S. at 255, 84 S.Ct. at 317.

We hold the trial court abused its discretion in allowing evidence of the disability payments. We need not address Employer's assertion that Employee later opened the door to his financial condition during direct testimony. The jury had already been made well aware Employee was receiving disability payments. As a result of this trial court error, we reverse and remand for a new trial. Accordingly, we need not address Employee's remaining points on appeal. However, to assist the trial court during the new trial, we choose to address those points which will likely arise again.

In Point II, Employee argues the trial court erred when it allowed Employer's expert witness to testify as to inadmissible hearsay. Specifically, the expert testified he learned through a conversation with Employer's rehabilitation officer that Employee declined rehabilitation services.

■ Employer hired its rehabilitation expert to provide an employment and rehabilitation plan for Employee. While the expert was researching Employee's situation, he contacted Employer's rehabilitation officer to learn Employee's history regarding the injury and past rehabilitation efforts. The expert testified he routinely relied on the type of information provided by the rehabilitation expert in analyzing similar situations and in forming opinions. However, Employer's expert then failed to advance any "opinion" which was supported or formed using the statements of Employer's rehabilitation officer.

The information upon which an expert opinion is based must: 1) be of a type which is reasonably relied upon by experts, and 2) be otherwise reasonably reliable.

§ 490.065(3), RSMo.1986. The statement heard by the jury, that Employee did not want rehabilitation services, originated from Employer itself through its rehabilitation officer. This person's claim that Employee did not want rehabilitation services implied Employee was malingering. We believe this statement constituted incompetent evidence because it was self-serving, unreliable and prejudicial. Furthermore, Employer could have simply called its rehabilitation officer as a witness and avoided this entire situation.

■ Employer claims the statement of its rehabilitation officer constituted merely background information, not substantive evidence. If a statement is not offered as substantive evidence but for background information upon which the expert based his opinion, it is admissible as an exception to the hearsay rule. *Stallings v. Washington Univ.,* 794 S.W.2d 264, 271 (Mo.App.1990). However, experts may not, under the guise of giving opinions, provide testimony consisting of incompetent evidence. *Id.* at 271. This rule of evidence complies with the statutory requirement the evidence be reasonably reliable. § 490.065(3), RSMo.1986. Furthermore, the *Stallings* case is directed at evidence composed of medical studies and literature, not a specific and unreliable statement made by a defendant (through its own employee) which discredits plaintiff.

Employee argues in Point III the trial court erred in giving Instruction No. 8, Employer's converse jury instruction, because it imposed too high a burden of proof and did not follow the language of Employee's verdict directing instruction. Employer's Instruction No. 8 read as follows: "Your verdict must be for defendant unless you believe defendant was negligent and as a *direct result* (our emphasis) of such negligence, plaintiff sustained damage." Employee's verdict director, Instruction No. 7, read as follows: "Your verdict must be for the plaintiff if you believe: First, defendant failed to provide reasonably safe conditions for work, and Second, defendant was thereby negligent, and Third, such negligence resulted *in whole or in part* (our emphasis) in injury to plaintiff."

Employee relies on *Snyder v. Chicago, Rock Island & Pacific R.R. Co.*, 521 S.W.2d 161 (Mo.App.1973) where plaintiff's instruction used the "in whole or in part" language of Instruction No. 7, and defendant's converse instruction used the "direct result" language of Instruction No. 8. The *Snyder* court found prejudicial error from this deviation. *Id.* at 164–5. In *Snyder*, the jury returned a defendant's verdict. The court held the converse instruction was confusing and constituted prejudicial error because it forced upon the plaintiff a different and more burdensome legal theory of causation. *Id.* at 165. "It allows the plaintiff recovery only if his damage was a *direct result of* rather than *in whole or in part from negligence* and thus requires proof of common law proximate cause, the very standard FELA [and the verdict director] abrogates." *Id.*, citing *Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 506 [6–8], 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957).

A true converse jury instruction should mirror the language of the verdict director. *Howard Construction Co. v. Teddy Woods Construction Co.*, 817 S.W.2d 556, 561 (Mo.App.1991) appeal after remand, 844 S.W.2d 29 (Mo.App.1992). In the present case, Employer did not mirror Employee's language, but instead provided the jury with a confusing instruction under which Plaintiff needed to prove more than legally required.

Under Point IV, Employee alleges trial court error in allowing into evidence irrelevant financial information concerning his wife's business. Initially, Employee's expert testified that Employee's wife owns a satellite dish business. Employee testified during direct examination that he had never worked for this business even though he had sales experience. During re-direct, Employee testified his wife's business had lost money in two of the last three years. On re-cross, Employer was then allowed to question Employee about the business' 1992 gross sales of $87,668.

During Employee's testimony, he was attempting to explain why he had not worked after his injury. Employee's expert testified Employee was always trying "to make an extra dollar." He had experience in automobile sales; however, he said people were not buying automobiles due to the economy. Employee implied during re-cross that he had not worked in his wife's business because of poor sales there as well.

In FELA actions, employees are entitled to damages consisting of the difference between what they could have earned before the accident and what they could have earned after. *Holley v. Missouri Pacific R.R. Co.*, 867 S.W.2d 610, 615 (Mo.App.E.D. 1993). Employees must use reasonable effort to mitigate damages by seeking appropriate employment, and any lost wages resulting from a failure to do so may be considered by the jury when calculating an employee's damages. *Id.* When Employee implied he never worked at his wife's business because of its poor financial performance, the trial court properly allowed Employer to rebut this with financial information on the business.

We reverse and remand for a new trial on all issues.

CRANE, P.J., and CRANDALL, J., concur.