**Edith RIPPETOE, Appellant,**

v.

**Willie FEESE, Appellee.**

**No. 2005–CA–002606–MR.**

Court of Appeals of Kentucky.

March 2, 2007.

Robert L. Bertram, Jamestown, KY, for appellant.

Michael K. Bishop, Joseph R. Cox, Bowling Green, KY, for appellee.

Before ABRAMSON and VANMETER, Judges; EMBERTON,[1] Senior Judge.

## OPINION

VANMETER, Judge.

Edith Rippetoe appeals from a judgment awarding her zero damages as a result of an automobile accident. Finding no error, we affirm.

In April 2003, Rippetoe's car was rear-ended by a car driven by Willie Feese, who was unable to stop as they came upon road construction and a stopped line of cars. At the time of the accident, Rippetoe was 79 years old and Feese was 88. The officer who responded to the scene testified that the damage to the vehicles was minor, and neither party requested medical attention at the scene.

Afterwards, however, Rippetoe developed headaches, neck pain, and hand numbness, as well as problems with her shoulder and arm. She received treatment from her family doctor, Dr. Phil Aaron, from chiropractor Dr. Anthony Grant, and from neurosurgeon Dr. Joseph Jestus.

Although she also received other medical treatment, these three individuals provided the only medical testimony at the trial on September 29, 2005.

Since Feese admitted liability for causing the accident, the primary issue at trial was whether the accident had caused the injuries of which Rippetoe complained. Aaron acknowledged that Rippetoe had severe degenerative disc disease, or osteoarthritis, which was present long before the accident. However, x-rays taken soon after the accident also revealed severe spondylosis at the cervical vertebrae, C5, C6 and C7. Aaron believed that this condition was caused by the accident and was not degenerative.

Grant testified that he first saw Rippetoe in February 2005. He then saw her approximately thirty times prior to his video deposition on August 25, 2005. He testified primarily as to his treatment, the permanency of her condition, and the fact that she appeared to be in a lot of pain. He did not testify as to causation, although he described "the degenerative changes in her cervical spine." On cross-examination, he stated that he was unaware that Aaron had been treating Rippetoe for osteoarthritis. As to her condition, Grant explained:

In Ms. Rippetoe's cervical spine, the MRI film and report showed cervical disc bulges with extensive degeneration throughout her cervical spine. Degenerations, disc degeneration is a form of osteoarthritis. The discs, they thin. The end plates on the vertebrae, the top and the bottom end plates, they get rough, they spur, it makes movement more difficult.

He described the degeneration as "simply wear and tear" related to aging.

---

1. Senior Judge Thomas D. Emberton, sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

Jestus saw Rippetoe twice, in May and July 2003. He testified by deposition as to her symptoms and pain, and as to his recommended course of treatment. He also testified that Rippetoe's degenerative disc disease was already present and not related to the automobile accident, and that her cervical spondylosis was caused by age-related changes in her discs.

The jury returned a verdict awarding zero damages. Following the trial court's denial of Rippetoe's motion for a new trial, or alternatively for a judgment notwithstanding the verdict, Rippetoe appeals.

 Rippetoe's first argument is that a jury award of zero damages necessitated a new trial, especially after Feese admitted liability for causing the accident. The appellate standard for reviewing a trial court's denial of a motion for a new trial is whether the denial was clearly erroneous. *Miller v. Swift*, 42 S.W.3d 599, 601 (Ky. 2001). If the motion for a new trial is based on a claim of inadequacy of the award of damages, the resolution of that issue depends on the underlying evidence and whether probative evidence supported the jury's verdict. *Thomas v. Greenview Hospital, Inc.*, 127 S.W.3d 663, 672 (Ky. App.2004), *overruled on other grounds, Lanham v. Commonwealth*, 171 S.W.3d 14 (Ky.2005). The "trial court's decision on whether to grant a new trial based on inadequate damages should be upheld unless it is clearly erroneous." *Thomas*, 127 S.W.3d at 672. And, the fact that one party was at fault in causing the accident does not require the jury to award damages. *Carlson v. McElroy*, 584 S.W.2d 754, 756 (Ky.App.1979).

 In this case, sufficient credible testimony was produced concerning Rippetoe's pre-existing degenerative disc disease to justify a conclusion that Rippetoe's condition and medical treatment did not result from the automobile accident, and to justi-fy the jury's award of zero damages. The trial court did not err in denying Rippetoe's motion for a new trial.

Rippetoe's second claim is that the trial court erred in permitting the deposition testimony of Jestus. The basis for this argument is that Feese untimely notified Rippetoe both of his intention to call Jestus as a witness, and of the date on which Jestus' deposition would be taken.

Some additional factual background is necessary before addressing this argument. In December 2004, the trial court initially scheduled the parties' trial for June 11, 2005. In that same order, the court established discovery deadlines, including the requirement that Rippetoe's pretrial expert disclosure should be made on or before May 11, or 30 days before trial. Feese's corresponding expert disclosure was required by June 5, or 6 days before trial. Approximately a month later, in January 2005, for reasons not appearing in the record, the trial court rescheduled the trial date for May 11, 2005, and entered corresponding discovery deadlines which tracked the prior discovery order: Rippetoe's expert disclosure was set for April 11, or 30 days before trial, and Feese's expert disclosure was set for May 1, or 10 days before trial. On May 9, Rippetoe filed a motion to continue the trial in order to obtain medical evidence. This motion was granted and the trial was rescheduled for September 29, 2005. No additional discovery order was entered.

Notwithstanding the lack of an additional discovery order, on July 22, over 60 days prior to trial, Feese filed his pretrial compliance document in which he listed his anticipated lay witnesses, including the medical records custodian for Jestus. With respect to expert witnesses, Feese stated that he "did not anticipate calling any expert witnesses other than medical

providers who may have treated the plaintiff in the past." On August 31, Rippetoe filed her pretrial statement, which listed Jestus as a potential witness and stated that he "has not been retained for the purpose of evaluating the Plaintiff or testifying in this case. Plaintiff expects that Dr. Jestus may testify at trial of this action regarding the care and treatment, including diagnosis and prognosis, given the plaintiff as a result of the injuries from the automobile accident on April 21, 2003."

On September 14, Feese's counsel notified Rippetoe's counsel of Feese's scheduled deposition of Jestus on September 20 at 7:00 a.m. at Jestus' office in Cookeville, Tennessee. At trial, Rippetoe's counsel acknowledged receipt of the faxed notice on September 14, but stated he obtained the mailed notice only on September 16. Rippetoe's counsel candidly admitted to the trial court that he did not attend the September 20 deposition because he thought the trial court would rule the testimony inadmissible.

Rippetoe's first ground for claiming that the trial court erred in admitting Jestus's testimony is that Feese failed to timely disclose Jestus as an expert witness and to make the disclosures required by CR 26.01(4)[2] "on or before June 5, 2005" as required by court order. This argument fails for two reasons.

■ First, the June 5 disclosure deadline was set in the initial order setting the trial for June 11, 2005. This order was clearly superceded by the trial court's subsequent order which advanced the trial date to May 11, and correspondingly advanced the discovery deadlines. Rippetoe then moved for a continuance of the May trial date, admittedly for reasons which involved the inability to comply with the trial court's discovery deadlines. We are compelled to conclude that once the trial court granted that motion without imposing additional discovery deadlines, no discovery deadlines remained in place.

■ Second, Rippetoe disclosed Jestus as one of her expert witnesses, who would testify "regarding the care and treatment, including diagnosis and prognosis, given" to her. Having reviewed the record and Jestus' testimony, we are of the opinion that this disclosure was sufficiently broad to encompass the scope of his testimony, with the result that Rippetoe cannot now claim unfair surprise.[3]

■ Next, Rippetoe claims that the trial court erred in admitting the testimony of Jestus because Feese's notice of Jestus' September 20 deposition was unreasonable, as Rippetoe's counsel did not receive mailed notice of the out-of-state deposition until September 16. Feese, on the other hand, points out that Rippetoe's counsel admittedly received a faxed copy of the notice on September 14, and that the two attorneys spoke by telephone on September 15 with Feese's counsel mentioning Jestus' deposition and the notice without objection by Rippetoe's counsel. We fur-

---

**2.** Presumably the court intended to reference CR 26.02(4).

**3.** The parties have not cited us to, and we have not found, any Kentucky authority as to whether treating physicians and their opinions are required to be disclosed under CR 26.02(4). We note that federal decisions interpreting the similar provisions of FED. R. CIV. P. 26(a)(2)(B) have reached conflicting results. *See generally Kirkham v. Société Air France*, 236 F.R.D. 9 (D.D.C.2006) (collecting and summarizing the conflicting authority as to whether a treating physician may offer opinion testimony on causation, diagnosis, and prognosis without the prerequisite of providing a Rule 26(a)(2)(B) report.) We do not decide this issue since, as noted above, Dr. Jestus, as Rippetoe's own treating physician, was equally if not more available to her as to Feese, as were his reports and records.

ther observe that while the deposition was out-of-state, it was noticed for Jestus' office in Cookeville, Tennessee, which is approximately 80 miles from Rippetoe's counsel's office in Jamestown, Kentucky[4] and approximately 115 miles from Feese's counsel's office in Bowling Green, Kentucky.[5]

CR 30.02 requires a party to give "reasonable notice in writing" of a deposition. Under the facts of this case, we believe Feese's notice was reasonable. If Rippetoe's counsel had believed the notice was unreasonable, he could have advised opposing counsel and attempted to arrange a more suitable time or location, sought a protective order from the court, or moved for a continuance of the trial date. The trial court did not err in permitting the deposition testimony of Jestus to be read at trial.

Rippetoe's final argument is that the trial court erred in giving a jury instruction which was "skewed" in favor of Feese. Instruction No. II stated:

> The Court instructs the jury that if you believe from the evidence that all or part of the complaints by the plaintiff, Edith Rippetoe, in this lawsuit are not the result of the accident on April 21, 2003, but were caused at some other time or occurred from some other cause, then you will not find for the plaintiff, Edith Rippetoe, for any injuries or damages which occurred at some other time or occurred from some other cause and you will only find for the plaintiff, Edith Rippetoe, such damages, if any, as you may believe she sustained as a direct result of the accident of April 21, 2003.

In *Carlson v. McElroy*, 584 S.W.2d 754 (Ky.App.1979), a virtually identical instruc-

tion was approved under similar factual circumstances, except in *Carlson* the plaintiff was involved in a subsequent accident. In this case, while no pre-existing or subsequent injury occurred, there was medical evidence that Rippetoe did suffer from a pre-existing medical condition of degenerative disc disease. As a result, the instruction as given was not erroneous.

The judgment of the Adair Circuit Court is affirmed.

ALL CONCUR.

4. http://www.mapquest.com. Under Ky. Rules of Evidence (KRE) 201, judicial notice "may be taken at any stage of the proceeding."

