**Norman PETERS, Appellant,**

v.

**Katherine WOOTEN,[1] Appellee.**

No. 2007–CA–001955–MR.

Court of Appeals of Kentucky.

July 17, 2009.

---

1. Throughout the record and appellate briefs, the Appellee's last name is listed as both Wooten and Wootton. The Appellee has since remarried and indicated that her last name is now Tipperman. We will defer to the notice of appeal and refer to the Appellee as Katherine Wooten.

Walter Aden Hawkins, Bowling Green, KY, for Appellant.

Michael K. Bishop, Joseph R. Cox, Bowling Green, KY, for Appellee.

Before ACREE and MOORE, Judges; KNOPF,[2] Senior Judge.

## OPINION

MOORE, Judge.

Norman Peters appeals a verdict and judgment for the defense after a jury trial in a personal injury case in the Warren Circuit Court. The issues before this Court are whether the circuit court erred in: (1) ordering Peters to execute a release allowing Wooten access to his application and medical records from the Social Security Administration and allowing Wooten's counsel to mention Peters's application to a "government agency" during the trial; (2) deciding that testimony by Peters regarding his medical condition on direct examination and testimony by Peters's wife on cross-examination opened the door to the reference to collateral source benefits; (3) not giving the jury instruction Peters requested regarding awarding damages if a pre-existing injury was found; and (4) denying Peters's motion for judgment notwithstanding the verdict.

After a careful review of the record, we affirm because: (1) the decision by the trial court in ordering discovery of Peters's social security disability application, while in error, does not provide a basis for relief sought by Peters; (2) testimony by Peters, as well as testimony by Peters's wife, his witness, opened the door to allow the admissibility of the collateral source evidence; (3) the jury instruction given by the trial court substantially conformed with similar jury instructions appellate courts have approved; and (4) there is no evidence in the record that the jury's verdict was flagrantly against the evidence or a result of passion or prejudice.

2. Senior Judge William L. Knopf, sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

## I. FACTUAL AND PROCEDURAL BACKGROUND

While stopped in traffic in Bowling Green, Kentucky, Peters was involved in an automobile accident when his pickup truck was struck from behind by Katherine Wooten. The force of the accident caused Peters to strike the back of his head against the glass in the back of the truck cab. Paramedics arrived at the scene of the accident, but Peters appeared uninjured and refused treatment. Peters was able to drive his truck away from the accident scene, but Wooten's vehicle was totaled.

Soon after the accident, Peters claimed that he suffered from a severe headache, pain in his neck and extremities, and tremors. Subsequently, Peters filed a complaint against Wooten and litigation ensued, resulting in a jury verdict for Wooten.[3]

The first issue on appeal originated during discovery, when Peters noted at his deposition that he had filed a claim for application for social security disability benefits. Wooten moved the court to compel Peters to sign an authorization allowing the release of any records relating to this application, claiming a right to examine the records because Peters put his physical condition into controversy and these records were material to the personal injury action.

Peters responded to Wooten's motion on two fronts. First, he argued that he did not waive his privacy rights by filing his complaint. Second, Peters asserted that the information regarding the application for benefits was beyond the scope of CR[4] 26.02,[5] as Wooten had already obtained medical records regarding his injuries.

The circuit court ordered Peters to execute an authorization form so his counsel could obtain Peters's application and records from the Social Security Administration. Peters's counsel was then to produce the records to Wooten.[6] Peters, moving *in limine,* again argued that these records were inadmissible as irrelevant. The court denied this motion.

The circuit court's having denied Peters's motion *in limine,* Wooten introduced at trial employment information contained in Peters's application to a "government agency." Wooten's counsel did not reference that the application was for social security disability benefits. Rather, Wooten's counsel referred to employment information Peters had provided on an application to a government agency that was inconsistent with Peters's prior testimony.[7] Peters's counsel timely objected to this,

3. Peters also filed a complaint against Richard Wooten, owner of the vehicle driven by Katherine Wooten. Richard Wooten moved to dismiss the suit against him. The circuit court granted the motion.

4. Kentucky Rule of Civil Procedure.

5. CR 26.02 permits the discovery of information relevant to the subject matter of a pending action reasonably calculated to lead to discovery of admissible evidence.

6. Peters moved to alter, amend or vacate the order permitting Wooten access to his social security disability records. The court vacated the order, but then ordered that Peters's own counsel would be responsible for retrieving the relevant files from the Social Security Administration and forwarding them to Wooten. The court ordered that Wooten was not permitted to disclose the records to any other parties other than her insurance company.

7. At trial, Peters testified regarding his employment history on direct examination. The employment information that he testified to did not conform to the employment history that he provided on his application for social security benefits or the previous employment that he testified to during a deposition.

but his objection was overruled. He now asks our Court to find error in this ruling.

A central issue at trial was whether Peters's condition, medical bills, and damages for pain and suffering were related to the accident.[8] Peters did not immediately seek medical treatment after the accident. Two days after the accident, he visited Dr. Doshi; x-rays and an MRI were performed at that time.[9] After this, Peters did not receive any treatment or visit any doctors for approximately three months although he complained of neck pain and headaches which he blamed on the accident.

The video depositions of two physicians who treated Peters after the accident were played for the jury. Dr. Walter Warren indicated that based on reasonable medical probability and Peters's lack of symptoms before the accident, Peters's pain and symptoms were caused by the automobile accident. Dr. Phillip Singer, another physician Peters consulted, explained that Peters had a degenerative disc disease. Dr. Singer elaborated that while the accident did not cause the degenerative disease, it was possible that the accident might have triggered symptoms of the condition. Dr. Singer was of the opinion that a discectomy, a surgery performed on the neck, would be the best course of procedure to alleviate Peters's pain. Both of the doctors' opinions regarding Peters's symptoms were based on their own evaluations and Peters's verbal description that the pain began after the accident. Neither physician reviewed Peters's medical history prior to the accident. In response, Wooten tried to demonstrate that Peters's pain was the product of a pre-existing

condition and was not a result of the accident.

Muddying the waters regarding whether Peters's medical condition was related to the accident and bringing to light the second issue on appeal is the testimony of Linda Keach, Peters's wife. During Keach's direct examination, she testified extensively to how much pain Peters was in after the wreck and that she knew something "bad" was wrong with him. So, she encouraged him to seek medical treatment. Despite this, Peters saw only one doctor, Dr. Doshi, two days after the accident and then did not seek treatment for the next three months.

On cross-examination, Wooten's counsel questioned Keach regarding the reasons that Peters did not seek medical treatment for the three months after the accident when she had testified that Peters was in a great deal of pain at that time. When specifically questioned regarding this three-month period without treatment, Keach first stated that they were waiting on referrals to other doctors. Next, she testified that "we had expended all of our money on doctor's bills and we were having to use our credit cards. . . ." Wooten's attorney followed up by questioning Keach: "Are you telling the jury your husband didn't go to the doctor for three months for financial reasons?" When Keach did not respond to the question as asked, Wooten's attorney questioned Keach why Peters skipped medical treatment for the three months after the accident when he had up to $10,000 available to pay for his medical bills. Wooten's counsel did not mention that these funds were from PIP benefits. Peters's attorney objected to this question and in a bench

---

8. The court previously granted summary judgment on liability against Wooten. Peters did not claim any lost wages.

9. The parties do not cite to the record regarding the results of the x-ray, MRI, or any treatment that Dr. Doshi recommended.

conference argued it was improper as a reference to collateral source benefits. The trial court overruled the objection.

Wooten's attorney then continued to question Keach on reasons Peters only treated with one doctor one time during the three months after the accident. When confronted with Wooten's attorney's specific question of whether the lack of medical treatment for three months was due to financial concerns, Keach answered "finances did have a lot to do with it." Out of the $10,000 available to pay for medical treatment for Peters, apparently only $2,000 to $2,500 was used during the three-month period for the visit to and x-rays and MRI performed by Dr. Doshi two days after the accident. Wooten's counsel questioned Keach why Peters did not use any of the remaining funds out of the $10,000 available to seek treatment during the three-month period in question. Keach conceded there were some funds available for treatment during the three-month period, but she did not know the amount. She then testified that Peters went to the doctor as frequently as he could. Peters contends the trial court erred in allowing in the testimony of the collateral source benefits.

While the jury instructions were being drafted, a third issue on appeal arose. Peters requested a jury instruction that would allow the jury, if finding in favor of Peters, to award him "compensation for losses attributable or related to his pre-existing physical condition, but only if and to the extent that such pre-existing condition was aroused or aggravated by the accident in question." Ultimately, the court provided an instruction that allowed the jury, if finding in favor of Peters, to award him for either past medical expenses, future medical expenses, and/or mental and physical suffering, including any suffering Peters was reasonably certain to incur in the future.

The final issue on appeal came about when the jury found unanimously for Wooten and did not award Peters any damages. Peters moved simultaneously for judgment notwithstanding the verdict, to alter, amend, or vacate the judgment, or in the alternative, for a new trial. The court denied his motion, and he now appeals that decision.

## II. ANALYSIS

### A. SOCIAL SECURITY RECORDS

The trial court allowed Wooten access to Peters's application and medical records for social security benefits.[10] At trial, Wooten referred to information regarding Peters's employment history as provided in his application to a government agency to illustrate that it was inconsistent with Peters's prior testimony.[11] Peters argues the circuit court erred on two grounds regarding these records.

Peters first claims that the court improperly ordered him to sign an authorization for the release of his records, which included medical information, from the Social Security Administration to his attorney. Peters's attorney in turn was ordered to make a copy of the complete set of records and produce it to Wooten's attorney. Pursuant to *Metropolitan Property & Cas. Ins. Co. v. Overstreet*, 103

---

**10.** The record does not clearly indicate whether Peters was filing for social security disability benefits on the basis of the injury he alleges resulted from the automobile accident.

**11.** At the time of trial, Peters's application for social security disability benefits was on appeal. He had different counsel for his social security application than counsel in the present case. Apparently Peters did not have copies of the information.

S.W.3d 31 (Ky.2003), and *Geary v. Schroering,* 979 S.W.2d 134 (Ky.App. 1998),[12] we agree with Peters that this was error by the circuit court. *Geary* holds that "[u]nless the parties otherwise agree, our Civil Rules provide the means by which [one party] can obtain [another party's] medical information." 979 S.W.2d at 136. Like *Geary,* the order at issue here could be considered as an improper *ex parte* subpoena. Consequently, it was error for the trial court to order the production of information related to Peters's social security disability application in the manner it did.

The impact on a case with a similar type of error has been explained by the Kentucky Supreme Court.

> As a practical matter, whenever a discovery violation occurs that allegedly allows discovery in error, a party will not have an adequate remedy by appeal because "once the information is furnished it cannot be recalled." [*Bender v. Eaton,* 343 S.W.2d 799, 800 (Ky.1961) ]. The information may or may not be used at trial and, generally, the admissibility of the information is not affected by the discovery violation. *See, e.g., Transit Authority of River City v. Vinson,* Ky. App., 703 S.W.2d 482, 486 (1985) ("[W]ork product immunity protects only the documents themselves and not the underlying facts.") Thus, when information that is obtained from a party in violation of the discovery rules is admitted as evidence at trial, this fact alone does not provide grounds for objecting to the introduction of the evidence and, hence, an aggrieved party has no means of preserving the issue for appeal.

*Wal–Mart Stores, Inc. v. Dickinson,* 29 S.W.3d 796, 800 (Ky.2000) (note omitted).

In a footnote in the above quote, the Court in *Dickinson* went on to state that

> [t]his, of course, does not preclude the party from objecting to the introduction of the evidence on some other independent ground, *e.g.,* that the evidence is privileged information under the Kentucky Rules of Evidence.

*Id.,* at n. 1.

Consequently, although an error occurred in the discovery process, that fact does not provide automatic grounds for objecting to the evidence at trial or for the relief sought by Peters.

The social security records were only used at trial for one purpose: to point out inconsistencies in Peters's prior testimony regarding his work history. Wooten did not reference that Peters attempted to collect benefits from this agency or disclose the name of the relevant agency. Peters's counsel objected at trial to Wooten's counsel's reference to Peters's application to a "government agency"; the trial court overruled the objection.

■ In Peters's brief, he claims the court erred in overruling his objection because "[t]he jury was left with the impression that [he] applied for and received benefits, including potential payment of medical expenses that made his request for damages from them unnecessary." As noted, this does not represent how the information on the social security application was actually used at trial. Wooten's counsel only referenced Peters's work history he provided to a government agency. Peters opened the door to Wooten's counsel's questioning, having testified inconsis-

---

**12.** In both of these cases, respective counsel filed petitions for writs of prohibition with the appellate court. In both cases, the writs were granted. Neither case dealt with, however, the mechanism to handle situations such as the case at hand where a writ is not sought and the discovery was permitted in error.

tently in his deposition and at trial regarding his work history. Accordingly, we cannot say the trial court abused its discretion in overruling Peters's attorney's objection. Consequently, although error occurred when the trial court ordered Peters to sign the release to obtain records from a non party, this fact is insufficient to warrant the relief sought by Peters.

## B. PETERS'S MEDICAL CONDITION AND THE OPENING OF THE DOOR TO INTRODUCTION OF COLLATERAL SOURCE BENEFITS

The standard of review regarding a trial court's evidentiary ruling is abuse of discretion. *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky.2000). An abuse of discretion is shown by proving that the circuit court acted in a manner that is unfair, arbitrary, unreasonable or unsupported by sound legal practice. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999).

Generally, information regarding collateral source payments may not be introduced to the jury. *See O'Bryan v. Hedgespeth*, 892 S.W.2d 571 (Ky.1995). This is sound legal doctrine because "a tortfeasor is not entitled to any credit against what he owes for payments of medical expenses or disability benefits paid by a collateral source to the tort victim pursuant to a contractual obligation owed to the victim from the collateral source...." *Burke Enterprises, Inc. v. Mitchell*, 700 S.W.2d 789, 796 (Ky.1985).[13]

Despite the sound policy reasons behind the inadmissibility of collateral source benefits, at least one exception has been carved into the solidity of this rule in Kentucky. Where the possibility of malingering exists by the claimant, particularly where a plaintiff may be exaggerating his injury for recovery, evidence relating to a claimant's receipt of compensation may be admissible. *Burke*, 700 S.W.2d at 796. The facts at hand raise the same evidentiary inference that malingering does: evidence of an embellishment of a situation—that of not being able to afford medical treatment—to have access to recovery and paint a picture before the jury that was not accurate. The malingering exception is intended to prevent a plaintiff from misleading the jury. The facts and impact on this jury are sufficiently similar to the malingering exception to allow in the testimony in the case at hand.

Other jurisdictions recognize an additional exception to the collateral source rule, which is relevant to the case at hand: to wit, when the plaintiff has put into issue hardships and financial distress or implies financial distress caused by defendant's action, the defendant may rebut this by showing that other financial means were available to plaintiff. *See Haischer v. CSX Transportation, Inc.*, 381 Md. 119, 848 A.2d 620, 629 (2004) (citing *Santa Maria v. Metro–N. Commuter R.R.*, 81 F.3d 265, 273 (2nd Cir.1996); *Gladden v. P. Henderson & Co.*, 385 F.2d 480 (3rd Cir. 1967); *Moses v. Union Pac. R.R.*, 64 F.3d 413, 416 (8th Cir.1995); *Moore v. Missouri Pac. R.R. Co.*, 825 S.W.2d 839, 842–43 (Mo.1992) (*en banc*)); *see also, Ford v. Gordon*, 990 S.W.2d 83, 85 (Mo.Ct.App. 1999); *Younts v. Baldor Electric Co., Inc.*, 310 Ark. 86, 832 S.W.2d 832, 834 (1992) ("The important point is that [the plain-

---

**13.** The collateral source rule "allows a plaintiff to (1) seek recovery for the reasonable value of medical services for an injury, and (2) seek recovery for the reasonable value of medical services without consideration of insurance payments made to the injured party." *Baptist Healthcare Systems, Inc. v. Miller*, 177 S.W.3d 676, 683 (Ky.2005) (citing 22 Am. Jur. 2d *Damages* § 409 (2004)).

tiff's] response was that he could not afford to rebuild [his business] could very well have been misleading to the jury."). This evidence "may be used 'for the narrow purpose of testing the credibility of plaintiff's assertion regarding financial distress.'" *Id.* (quoting *Leake v. Burlington N. R.R. Co.,* 892 S.W.2d 359, 363 (Mo.App. 1995); *see also Lange v. Missouri Pac. R.R. Co.,* 703 F.2d 322, 324 (8th Cir.1983)). The rationale behind the financial hardship exception recognized by other jurisdictions is the same as Kentucky's exception for malingering: that the plaintiff may not paint a misleading picture for the jury.

Not all jurisdictions considering the financial hardship exception have endorsed it. *See e.g., Jurgensen v. Smith,* 611 N.W.2d 439, 443–44 (S.D.2000). We have reviewed the rationale for the *Jurgensen* Court not adopting the exception and find we agree more with the dissenting opinion than the majority opinion. In the dissenting opinion, Justice Amundson profoundly reflects upon the purpose and fairness of trials and why in some situations evidence of collateral source benefits should be permitted. Justice Amundson wrote

> [t]he majority states that the reasoning behind the collateral source rule is to eliminate "the danger that the jury may be inclined to ... reduce [the plaintiff's] damage award, when it learns that the plaintiff's loss is entirely or partially covered." *See Moses [v. Union Pacific R.R.],* 64 F.3d [413]at 416 [ (8th Cir. 1995) ]. But this rule should not provide a shield for the introduction of evidence which has nothing to do with the determination of the damages amount. There is no question that [the plaintiff herein] is entitled to recover damages. On the other hand, there is also no dispute under our settled law that both parties are entitled to a fair trial. *See, e.g., Black v. Class,* 1997 SD 22, ¶ 24, 560 N.W.2d 544, 550 (noting that while a

party is not entitled to a perfect trial, they are entitled to a fair trial).

We have previously held that "[t]rials are a search for the truth as determined by the jury based upon all the evidence." *Tunender v. Minnaert,* 1997 SD 62, ¶ 28, 563 N.W.2d 849, 855. If the truth that [the plaintiff] was trying to show the jury that he was living in poverty, then [the defendant] should have been allowed to challenge that claim, notwithstanding the collateral source rule. In other words, based upon this record, [the plaintiff] has opened the door and [the defendant] should be allowed to come in and challenge evidence which has a potential, if not strong possibility, of inciting the jury. This Court should not allow the collateral source rule to place blinders on its consideration of the case.

*Id.* at 446–47.

Justice cannot allow a general precept of the law to be manipulated to mislead the jury. The policy reasons underlying Kentucky's adopted malingering exception are similar enough to the rationale underlying the financial hardship exception to accept those jurisdictions' recognition of the latter exception as persuasive authority worthy of recognition in this Commonwealth. Kentucky has a long history of holding accountable parties who open the door to evidence where the jury may be mislead. As aptly stated in *Harris v. Thompson,* 497 S.W.2d 422, 430 (Ky.1973), Peters, "opened the book on the subject, [and was] not in a position to complain when [his] adversaries sought to read other verses from the same chapter and page."

■ Recognizing the financial hardship exception, however, does not end our inquiry into the admissibility of the financial benefits that were available to Peters. The collateral source rule, particularly

with the facts involved in this case, cannot be viewed in a vacuum; there remains the issue of whether the probative value outweighed the prejudicial value of Wooten's attorney's question regarding Peters's possible access to benefits. The central issue in the trial was the whether Peters's medical condition was related to the accident. Peters's reason for not seeking medical treatment more close in time to the accident was an essential factor for the jury to consider. Credibility of the witnesses was very much at stake in this matter. Peters's claims of immense pain, yet failure to visit a doctor for a three-month period after the accident, when he had, in fact, had access to funds which could have paid for medical treatment during this time, presented a key credibility issue for jury. Any prejudice produced by this evidence was outweighed by the probative value of not leaving the impression with the jury that Peters lacked monetary means to seek medical treatment during this three-month period. Left unchallenged, the jury may have been easily misled on this issue. Accordingly, the trial court did not abuse its discretion when it ruled that it would not allow the testimony that Peters could not afford medical treatment to stand uncontested.

## C. JURY INSTRUCTION

Peters next argues that the circuit court erred in refusing to give the jury an instruction allowing an award of damages resulting from aggravation of a pre-existing injury. Errors alleged regarding jury instructions are considered questions of law and are to be reviewed on appeal under a *de novo* standard of review. *Hamilton v. CSX Transportation, Inc.,* 208 S.W.3d 272, 275 (Ky.App.2006).

Peters requested a special instruction specifically allowing the jury to award him damages for aggravating a pre-existing injury. The jury instructions that were ultimately provided to the jury by the court stated:

> The Court instructs the jury that if you believe from the evidence that all or part of the complaints by the plaintiff, Norman Peters, in this lawsuit were a result of the accident on May 14, 2003, you shall find for the plaintiff for such damages that you may believe he sustained as a direct result of the May 14, 2003 accident. If you believe from the evidence that the complaints by the plaintiff, Norman Peters, in this lawsuit are not the result of the accident of May 14, 2003, you will find for the defendant, Katherine Wooten.

The court then separated the damage awards into three general categories, allowing the jury to award Peters for past medical expenses, future medical expenses and/or mental and physical suffering, including suffering reasonably certain to incur in the future.

■ Kentucky's approach to jury instructions is that "they should provide only the bare bones, which can be fleshed out by counsel in their closing arguments if they so desire." *Cox v. Cooper,* 510 S.W.2d 530, 535 (Ky.1974). This simple standard is reiterated by a long line of Kentucky cases which call for a similar approach. *Bayless v. Boyer,* 180 S.W.3d 439, 450 (Ky.2005).

■ Jury instructions "must be based upon the evidence and they must properly and intelligibly state the law." *Howard v. Commonwealth,* 618 S.W.2d 177, 178 (Ky. 1981) (citing *Simpson v. Commonwealth,* 313 Ky. 599, 233 S.W.2d 118, 120 (1950)). "The purpose of an instruction is to furnish guidance to the jury in their deliberations and to aid them in arriving at a correct verdict. If the statements of law contained in the instructions are substantially correct, they will not be condemned as preju-

dicial unless they are calculated to mislead the jury." *Ballback's Adm'r v. Boland–Maloney Lumber Co.,* 306 Ky. 647, 208 S.W.2d 940, 943 (1948).

 After an examination of the record, we cannot say that the court erred in providing the previously stated instruction to the jury. There are existing cases that mirror the facts involved in this case. For example, *Carlson v. McElroy,* 584 S.W.2d 754 (Ky.App.1979), and *Rippetoe v. Feese,* 217 S.W.3d 887 (Ky.App.2007), are cases involving possible pre-existing injuries or conditions in which this Court held that jury instructions substantially similar to the instructions in the current case were proper.

Although in the case at hand the circuit court did not specifically provide an instruction on aggravating pre-existing injuries, the court provided a broad instruction consistent with case law in which the jury could have awarded Peters damages for such. Peters's counsel had the opportunity in closing arguments to explain to the jury how this encompasses a pre-existing injury. Therefore, the lower court did not err in instructing the jury in this manner.

## D. JUDGMENT NOTWITHSTANDING THE VERDICT

Peters argues that the court failed to enter a judgment notwithstanding the verdict (JNOV) regarding the medical bills relating to the wreck. He asserts that Wooten did not produce any evidence to rebut the proof that Peters's medical bills were incurred as a result. We disagree with Peters for a number of reasons.

 The standard of review regarding a motion for a JNOV is a high one for an appellant to meet.

In ruling on either a motion for a directed verdict or a motion for judgment notwithstanding the verdict, a trial court is under a duty to consider the evidence in the strongest possible light in favor of the party opposing the motion. Furthermore, it is required to give the opposing party the advantage of every fair and reasonable inference which can be drawn from the evidence. And, it is precluded from entering either a directed verdict or judgment n.o.v. unless there is a complete absence of proof on a material issue in the action, or if no disputed issue of fact exists upon which reasonable men could differ.

*Taylor v. Kennedy,* 700 S.W.2d 415, 416 (Ky.App.1985). A reviewing court may not disturb a trial court's decision on a motion for a judgment notwithstanding the verdict unless that decision is clearly erroneous. *Bierman v. Klapheke,* 967 S.W.2d 16, 18 (Ky.1998). The denial of a motion for a judgment notwithstanding the verdict should only be reversed on appeal when it is shown that the verdict was palpably or flagrantly against the evidence such that it indicates the jury reached the verdict as a result of passion or prejudice. *Id.* at 18–19.

 Two physicians who treated Peters after the accident testified via video depositions regarding Peters's condition. While the physicians noted that Peters's symptoms appeared to begin after the accident in question occurred, they both noted that their evaluation of Peters reflected only the medical history that he provided to them. Each of the physician's prognosis was not based on any medical history that was available through Peters's previous physicians or medical records. The jury did not have any evidence besides Peters's own testimony to determine how the accident altered his physical state, which was subject to a credibility determination by the jury.

Reviewing the trial, Peters's credibility likely impacted the jury's verdict. Peters

provided conflicting testimony regarding his employment history, mentioning only certain occupations during his deposition and at trial as compared to the occupations listed on his application to a government agency. Peters even disagreed frequently with the information on physicians' reports that were presented at trial, claiming that the physician's notes were wrong. This testimony presented credibility issues which are clearly the province of the jury. We cannot substitute our judgment for the jury on credibility issues.

After viewing the evidence in the light most favorable to Wooten and giving her every fair and reasonable inference that can be drawn from the evidence, nothing presented before this Court leads us to believe that the jury verdict was palpably or flagrantly against the evidence such that it indicates the jury reached the verdict as a result of passion or prejudice. Thus, the circuit court did not err in denying Peters's motion.

For the foregoing reasons, the judgment of the Warren Circuit Court is affirmed.

ALL CONCUR.